**Brandon Darron SIMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–01–00694–CR to 05–01–00696–CR.**

Court of Appeals of Texas, Dallas.

Aug. 20, 2002.

Rehearing Denied Oct. 1, 2002.

April E. Smith, Mesquite, for appellant.

William T. (Bill) Hill, Jr., District Attorney, Patricia Poppoff Noble, Assistant District Attorney, Dallas, for state.

Before Justices LAGARDE, BRIDGES, and FRANCIS.

## OPINION

Opinion By Justice LAGARDE.

Brandon Darron Sims appeals his convictions for aggravated kidnapping,[1] aggravated robbery,[2] and aggravated sexual assault.[3] Appellant pleaded guilty before the jury to the aggravated robbery and aggravated kidnapping, and the jury found appellant guilty of the aggravated sexual assault. After finding the enhancement paragraph in each indictment true, the jury assessed punishment at ten years' confinement for the aggravated kidnapping, fifteen years' confinement for the aggravated robbery, and twenty-five years' confinement for the aggravated sexual assault.

In his first five issues, appellant contends 1) the evidence is legally and factually insufficient to support his conviction for aggravated sexual assault, 2) the trial court erred by failing to give a burden of proof instruction on the extraneous offense, 3) in each case, there is a fatal variance between the allegations of the enhancement paragraph and the proof of-

---

1. Trial cause number F–0100663–PW, appellate cause number 05–01–00694–CR.

2. Trial cause number F–0100664–PW, appellate cause number 05–01–00695–CR.

3. Trial cause number F–0100665–PW, appellate cause number 05–01–00696–CR.

fered, and 4) the trial court erred in its jury charge instruction on the burden of proof on the enhancement paragraph. In his sixth issue, appellant requests that the judgment in the aggravated kidnapping case be reformed to reflect that he was convicted of a second-degree felony. In his seventh issue, appellant requests that the judgment in the aggravated sexual assault case be reformed to reflect that he entered a plea of not true to the enhancement paragraph. For reasons that follow, we resolve issues one through three against appellant, and we resolve issue four in appellant's favor. Because of our disposition of issue four, we need not address issues five through seven. Accordingly, we reverse the trial court's judgments only on the basis of error made in the punishment stage of trial, and we remand all three cases for new punishment hearings consistent with article 44.29(b) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2002).

## FACTUAL BACKGROUND

On November 25, 2000, around nine o'clock at night, Karen Rathjen[4] was in a Whole Foods parking lot when appellant approached her, pointed a gun at her, and told her to get into her car. After she tried to escape, appellant became nervous and told her to do what he said or he would kill her. Appellant told her to take him to South Oak Cliff. He also demanded money from her. While Rathjen was driving, appellant placed his finger in her vagina. To stop him, Rathjen yelled that she could not drive. A short time later, appellant told her to pull over in a residential area. Appellant then repeatedly penetrated Rathjen's mouth, vagina, and anus with his penis while holding a gun to Rathjen's head. Rathjen heard a child crying

and saw a man and child walk past the car during the assault. Afterward, appellant told Rathjen to take him to an ATM machine. After she withdrew two hundred dollars, he took the money and told Rathjen to take him to South Oak Cliff. When the area became familiar to appellant, he removed the gun from her side and said he would not hurt her. Eventually, appellant told her to pull over, they switched places, and he drove her car. After driving a short distance, appellant pulled into a residential area and released Rathjen. Rathjen began walking back in the direction from which they had come. She sought help from a man at a fast food restaurant who told her to go someplace else because he had just locked up. She then went to another fast food restaurant. Although it was also closed, the employees let her in. She called the police and reported her car stolen. Rathjen testified she did not tell the 911 operator about the sexual assault because the young female employee was standing next to her. Before the police arrived, Rathjen went to the bathroom to clean up. When officers Damaso Colon and Armando Dominguez arrived, Rathjen told them she had been raped. After giving them a description of her car and appellant, the officers took her to the hospital for a rape examination.

At the hospital, John Schorge, M.D. conducted a rape examination. He observed abrasions on Rathjen's right knee, right ankle, and at the vaginal opening. He also observed erythema in the anal area. Schorge testified the physical findings were consistent with sexual assault. The nurse asked Rathjen for her clothes but told her she did not have to give them up. Although Rathjen understood her clothes might lead to physical evidence, she chose to keep her clothes. The forensic reports

---

4. Karen Rathjen was a pseudonym used by    the victim.

showed the hair recovered from the pubic hair combing was not consistent with appellant's racial characteristics and no semen was detected from the vaginal, anal, and oral samples.

Eric Rathjen, a detective with the crimes against persons division, followed up on the sexual assault. About a month later, Rathjen gave Detective Rathjen her clothes. Forensic tests conducted on the clothes, however, revealed no physical evidence consistent with appellant's racial characteristics. After releasing to the media a photograph taken from the bank's ATM camera, Detective Rathjen learned of appellant's identity from anonymous tips and talking to appellant's family members.

On December 17, 2000, Detective Rathjen interviewed Marcus Jarvis, appellant's cousin. Jarvis's fingerprints were found on Rathjen's car. Jarvis said he helped appellant change a tire on the car. Jarvis told Detective Rathjen that appellant had told him about how he picked up a lady at the Whole Foods store, held a gun on her, made her get money from an ATM machine and drive him to Oak Cliff, and had oral and vaginal sex with her.

After appellant was arrested on December 17, Detective Rathjen interviewed appellant. During the interview, appellant signed a voluntary written statement in which he admitted to aggravated robbery and aggravated kidnapping, but he denied sexually assaulting Rathjen. In his investigation of the sexual assault, Detective Rathjen was unable to locate the persons who walked by the car during the assault, and he knew there was no forensic evidence to support the sexual assault.

Tonya Jackson, a "Dallas ISD" officer, found a gun in an alley behind her home and turned it over to Dallas police officer Billy Eaton. Through interviews with witnesses, this gun was connected to appellant, and a palm print found on the maga-zine of the gun matched appellant's palm print. When Detective Rathjen was asked if the physical description of the gun was consistent with Rathjen's description of the gun used during the kidnapping, robbery, and sexual assault, he agreed.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, appellant contends the evidence is legally and factually insufficient to support his conviction for aggravated sexual assault because there is no scientific evidence. Specifically, no semen was found and there was no hair found that was consistent with appellant's characteristics. The State contends the evidence is legally and factually sufficient because the conviction is supported by Rathjen's testimony and the medical evidence showing trauma to her vaginal opening and anal area.

### Legal Sufficiency

█ Appellate review of legal sufficiency is limited to determining whether, after viewing the evidence in the light most favorable to the judgment, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making this determination, we consider all of the evidence, whether or not properly admitted. *See Johnson v. State*, 967 S.W.2d 410, 411 (Tex.Crim.App.1998).

The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Crim.App. 1998). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Id.* The jury may believe or disbelieve all or any part of a witness's testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984);

*Jackson v. State,* 3 S.W.3d 58, 60 (Tex. App.-Dallas 1999, no pet.).

■ The legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). This hypothetical charge would set out the law, be authorized by the indictment, not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describe the particular offense for which the defendant was tried. *Id.* This standard applies to both jury and bench trials. *Id.*

The first paragraph of the indictment in the aggravated sexual assault case required the State to prove beyond a reasonable doubt that appellant: 1) intentionally or knowingly, 2) caused the penetration of the female sexual organ or the anus of Rathjen, 3) without Rathjen's consent, 4) by appellant's sexual organ, and 5) in the course of this same criminal episode, appellant used or exhibited a deadly weapon, to wit: a firearm. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(A)(iv) (Vernon Supp.2002). The second paragraph of the indictment required the State to prove that appellant: 1) intentionally or knowingly, 2) caused the penetration of Rathjen's mouth, 3) without Rathjen's consent, 4) by appellant's sexual organ, and 5) in the course of this same criminal episode, appellant used or exhibited a deadly weapon, to wit: a firearm. *See id.* § 22.021(a)(1)(A)(ii), (a)(2)(A)(iv).

Notwithstanding appellant's argument that the lack of scientific evidence connecting him to the sexual assault renders the evidence legally insufficient, we conclude the evidence is sufficient to show appellant was the assailant. A conviction for aggravated sexual assault is supportable on the uncorroborated testimony of the victim if she informed any person, other than the defendant, of the alleged offense within one year of the alleged offense. TEX.CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon Supp.2002); *see Butler v. State,* 875 S.W.2d 804, 806 (Tex.App.-Beaumont 1994, no pet.). The State is required to prove that the accused is the person who committed the crime charged. *Johnson v. State,* 673 S.W.2d 190, 196 (Tex.Crim.App. 1984).

The evidence shows Rathjen identified appellant as the man who sexually assaulted her. Appellant held a gun to her head and repeatedly placed his penis in her mouth, anus, and vagina. He did not ejaculate or wear a condom. During the assaults, appellant told her to shut up and threatened to kill her. Rathjen testified she had not had sexual intercourse in two years, and she did not consent to the sexual acts. On the night of the assault, Rathjen told police officers about the rape.

In addition to Rathjen's testimony, other evidence links appellant to the sexual assault. Appellant's palm print was found on the gun that was used in the assault. Detective Rathjen identified appellant as the person depicted in the photographs from the bank's ATM camera. The medical report showed Rathjen had an abrasion on her right knee, right ankle, and vulva. Also, erythema was present at the anal opening. Schorge testified that Rathjen's injuries were consistent with a sexual assault that occurred within twenty-four hours of the examination.

Jarvis told the police that appellant told him appellant had oral sex and sexual intercourse with the woman whose car appellant stole. At trial, Jarvis admitted he made the statement, but said he lied to the police because they would not let him go until he told them something and he did not want to be charged with the offense.

Jarvis denied that he changed his story because of family pressure.

Having viewed the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support appellant's conviction for aggravated sexual assault. We resolve the first issue against appellant.

### Factual Sufficiency

When reviewing the factual sufficiency of the evidence, we review all the evidence, but not in the light most favorable to the prosecution. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In conducting this analysis, our duty is to examine the jury's weighing of the evidence. *See Scott v. State*, 934 S.W.2d 396, 398 (Tex.App.-Dallas 1996, no pet.). We must, however, be appropriately deferential to the jury's findings to avoid substituting our judgment for that of the jury. *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000). Unless the record clearly reveals a different result is appropriate, we must defer to the jury's determination concerning what weight to give contradictory testimony. *See id.* at 8. We reverse a judgment only if: (1) the evidence is so weak that the verdict is clearly wrong and unjust, or (2) the verdict is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 11. A decision is not clearly wrong and unjust merely because the fact finder resolved conflicting evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim.App.1997).

■ Direct evidence of an element of a crime, without contrary evidence, is factually sufficient to support the element. *Goodman v. State*, 66 S.W.3d 283, 286 (Tex.Crim.App.2001). If the jury believes the testimony of the person offering the direct evidence, then the "testimony conclusively proves the point." *Id.* If there is contrary evidence, then the reviewing court must determine whether the jury's finding is against the great weight and preponderance of the evidence. *Id.* The appellant's evidence must be "so strong, so overwhelming, so much more extensive than the State's evidence that it reaches the level of the twelve boy scouts and renders the jury's verdict so contrary to the great weight and preponderance of the evidence that it is manifestly unjust." *Id.* at 286–87.

■ Appellant argues the evidence is factually insufficient because there is no scientific evidence connecting him to the sexual assault. We cannot agree. The State presented direct evidence that appellant sexually assaulted Rathjen. The record shows Rathjen identified appellant as the person who repeatedly sexually assaulted her. Rathjen's physical condition was consistent with sexual assault. Appellant's palm print was found on the gun used during the assault.

Evidence to the contrary was not so strong, so overwhelming, or so much more extensive than the State's evidence for the verdict to be wrong and unjust. Appellant did not testify or call any witnesses. Appellant's voluntary statement in which he denied sexually assaulting Rathjen was admitted into evidence. Jarvis testified he had lied to the police when he told them appellant had told him appellant sexually assaulted a woman appellant picked up at the Whole Foods store. Although there was no scientific evidence linking appellant to the aggravated sexual assault, Rathjen testified appellant did not ejaculate and she washed off her body and clothes prior to the rape examination.

Because the record does not clearly reveal a different result is appropriate, we must defer to the jury's determination concerning the weight of the testimony. Hav-

ing viewed all the evidence, both for and against the verdict, we cannot say the evidence supporting the verdict is so weak or the verdict is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. We conclude the evidence is factually sufficient to support appellant's conviction for aggravated sexual assault. We resolve the second issue against appellant.

### EXTRANEOUS OFFENSE AT PUNISHMENT PHASE

In his third issue, appellant contends he was egregiously harmed by the trial court's failure in each case to give a burden of proof instruction regarding the extraneous offense admitted during the punishment phase.

The record shows that on September 21, 1995, a juvenile court judge found the then-thirteen-year-old appellant had committed aggravated assault. He ordered appellant placed on probation. On November 13, 1995, the juvenile court judge found appellant committed aggravated robbery and ordered appellant committed to the Texas Youth Commission. The November 1995 aggravated robbery adjudication was used to enhance punishment for the aggravated kidnapping, aggravated robbery, and aggravated sexual assault. At punishment, appellant pleaded "not true" to the enhancement paragraph in each indictment. The trial court admitted both juvenile adjudications into evidence. Appellant's name appeared below a picture attached to both adjudications. Deputy Richard Hamb testified that the fingerprints contained in the adjudications matched appellant's known fingerprints. Ruby Sims, appellant's mother, testified that appellant was committed to the Texas Youth Commission for aggravated robbery.

In *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g), the court of criminal appeals held that article 36.19 of the code of criminal procedure prescribed the manner in which jury charge error is reviewed on appeal. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim.App.1996). First, an appellate court must determine whether error exists in the jury charge. *Id.* Second, the appellate court must determine whether sufficient harm was caused by the error to require reversal. *Id.* The degree of harm necessary for reversal depends upon whether the error was preserved. *Id.* Error properly preserved by a timely and specific objection will require reversal if any harm is present, regardless of degree. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986). To be reversible, unpreserved error must have been so harmful that the defendant was denied a fair and impartial trial. *Id.* In other words, a defendant must have suffered actual egregious harm. *Id.*

First, we must determine whether error exists. Under article 37.07, section 3(a)(1) of the code of criminal procedure, at the punishment phase, the State or defendant may offer "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant . . ., regardless of whether he has previously been charged with or finally convicted of the crime or act." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2002). The jury cannot consider evidence of extraneous offenses or bad acts in assessing punishment until it is satisfied beyond a reasonable doubt that such offenses or acts are attributable to the defendant. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App.2000) (op. on reh'g). The defendant is not required to make an objection or request an instruction on the burden of proof for extraneous offense or bad act evidence. *Id.* The trial court's

failure to submit such an instruction is error. *Id.*

In these cases, the trial court did not include an instruction in the jury charge that the State was required to prove the extraneous offense beyond a reasonable doubt. Appellant neither objected to this omission nor requested an instruction on the State's burden of proof. Because the trial court did not submit an instruction on the burden of proof for the extraneous offense admitted during the punishment phase, the trial court erred. *See Batiste v. State,* 73 S.W.3d 402, 407 (Tex.App.-Dallas 2002, no pet.).

▆ To determine whether the trial court's error is reversible, however, we must conduct a harm analysis. And because error was not preserved, egregious harm must be shown to entitle appellant to a reversal. Egregious harm is a difficult standard to prove, and such a determination must be done on a case-by-case basis. *Hutch,* 922 S.W.2d at 171. Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Id.* To establish egregious harm, direct evidence is not required. *Id.* The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and the weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Arline,* 721 S.W.2d at 351.

We begin with an examination of the entire jury charge. At the guilt-innocence phase, each charge instructed the jury to disregard any testimony regarding other offenses committed by appellant unless the jury found and believed beyond a reasonable doubt that appellant committed the other offenses. In the punishment jury charge for each offense, the extraneous offense was not mentioned. The jury assessed punishment at fifteen years' confinement for the aggravated robbery, twenty-five years' confinement for the aggravated sexual assault, and ten years' confinement for the aggravated kidnapping.

Next, we examine the evidence presented. Appellant's juvenile adjudications were presented at the punishment stage of the trial and were not contested. The State offered proof that appellant was the person who committed the September 1995 aggravated assault. Appellant presented no controverting evidence. Appellant's only witness, Ms. Sims, testified that appellant was violent as a juvenile because his aunt gave him a "whooping" with a stick. She also testified that appellant was "slow" and was in special education classes until he stopped going to school after the sixth grade.

Finally, we examine the jury arguments. The majority of defense counsel's argument at punishment focused on the multiple punishment scenarios available for aggravated robbery. Defense counsel discussed the evidence that showed appellant released Rathjen in a safe place, the State's failure to prove beyond a reasonable doubt the allegations in the enhancement paragraph, and appellant's tragic childhood. When defense counsel was recounting appellant's childhood, he mentioned the extraneous offense.

The State argued appellant was guilty of each offense and the evidence showed appellant did not release Rathjen in a safe place. The State reviewed the evidence proving appellant committed the aggravated robbery alleged in the enhancement paragraph; the State did not mention the extraneous juvenile aggravated assault offense. The State concluded by asking the jury to start its deliberations with a life

sentence for all three offenses and then look for mitigating circumstances.

Having assayed the degree of harm in light of the record before us, we conclude appellant did not suffer egregious harm from the trial court's failure to instruct the jury on the State's burden of proof on the extraneous offense. The State's evidence connected appellant to the September 1995 aggravated assault; the fingerprints and photograph attached to the adjudication matched appellant's. *See, e.g., Webber v. State*, 21 S.W.3d 726, 732 (Tex.App.Austin 2000, pet. ref'd) (a videotaped bad act leaves little doubt of the appellant's connection with the bad act evidence); *Frazier v. State*, 15 S.W.3d 263, 267 (Tex.App.-Waco 2000, no pet.) (prior juvenile adjudications were properly proved up with the appellant's fingerprints). The jury assessed punishment well below the maximum punishment for each conviction. *See, e.g., Brown v. State*, 45 S.W.3d 228, 232 (Tex.App.Fort Worth 2001, pet. ref'd) (jury assessed punishment well below what the State requested, indicating it did not base punishment on extraneous offense evidence). Finally, it is plausible the jury assessed punishment based on the facts of the offenses alone. *See, e.g., Allen v. State*, 47 S.W.3d 47, 52 (Tex.App.-Fort Worth 2001, pet. ref'd) (facts surrounding offense supported the punishment assessed by the jury). We, therefore, resolve the third issue against appellant.

### ENHANCEMENT PARAGRAPH

In his fourth issue, appellant contends a fatal variance exists between the allegations in the enhancement paragraph in each indictment and the proof offered at trial. Specifically, appellant argues the State failed to prove: 1) the prior "conviction" as stated in the enhancement paragraph, 2) appellant was charged by indictment for the juvenile offense, 3) appellant

was "convicted" of aggravated robbery, and 4) appellant was known by the name or used the alias "Brandon Darron." Appellant alleges he was unfairly surprised.

The following enhancement paragraph was alleged in each indictment:

AND THE GRAND JURORS AFORESAID do further present upon their oaths that prior to the commission of the aforesaid offense by the said BRANDON DARRON SIMS, to-wit: on the 13TH day of NOVEMBER, A.D.1995, in the 304TH DISTRICT COURT of DALLAS County, Texas, in cause number JD–36559–W on the docket of said Court, the said BRANDON DARRON under the name of BRANDON D. SIMS, was duly and legally convicted in said last named Court of a felony, to-wit: AGGRAVATED ROBBERY, as charged in the indictment, upon an indictment then legally pending in said last named Court and of which said Court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by him, the said BRANDON DARRON SIMS, prior to the commission of the offense hereinbefore charged against him, as set forth in the first paragraph hereof,

Appellant pleaded not true to the enhancement paragraph. State's exhibit 22, the November 13, 1995 order of adjudication and judgment of disposition for aggravated robbery, showed appellant was adjudicated and had a prior adjudication. The order further showed the trial court considered "the pleadings, evidence, and arguments of counsel" and referred to the State as the petitioner. The application paragraph in each jury charge tracked the language of the enhancement paragraph in each indictment. The record shows that when defense counsel was presented with the charge, he stated it properly told the jury "it is the State's duty to prove beyond a

reasonable doubt each and all of the allegations set out in the second paragraph of these indictments." Defense counsel objected to the jury charge on punishment on the grounds the State failed to prove appellant was indicted for and convicted in juvenile court of the juvenile aggravated robbery offense and that the name was wrong in the enhancement paragraph. Following these objections, and after an off-the-record discussion, the trial court removed the words "each and all" that preceded the word "allegations" in the jury instruction.[5] The trial court overruled defense counsel's objection to the change. The record shows the trial court instructed the jury in relevant part,

> [I]f you find beyond a reasonable doubt that this defendant is the same person who was convicted as alleged in the second paragraph of this indictment ... and that the allegations set out in the second paragraph of this indictment are true, then you will so state in your verdict. . . .

■■■ A variance claim is considered a challenge to the sufficiency of the evidence under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Gollihar v. State,* 46 S.W.3d 243, 247 n. 6 (Tex.Crim.App.2001). The doctrine of variance is to avoid surprise to the defendant. *Freda v. State,* 704 S.W.2d 41, 42 (Tex.Crim.App.1986). The enhancement allegations provide the defendant with notice of the prior conviction on which the State intends to rely to enhance punishment and do not have to be alleged with the same particularity as the allegations in the primary offense. *Williams v. State,* 980 S.W.2d 222, 226 (Tex.App.-Houston [14th Dist.] 1998, pet ref'd). A variance between the offense alleged in an enhance-ment paragraph and the proof presented at trial is material and fatal only if it "mislead[s] the defendant to his prejudice." *Freda,* 704 S.W.2d at 42; *Williams,* 980 S.W.2d at 226; *see Gollihar,* 46 S.W.3d at 257 (stating a variance between the indictment and the proof offered at trial is "fatal only if it is material and prejudices the defendant's substantial rights" (quoting *United States v. Sprick,* 233 F.3d 845, 853 (5th Cir.2000))). In *Gollihar,* the court of criminal appeals stated the test for materiality is whether the indictment informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and whether the indictment subjected the defendant to risk of being prosecuted in the future for the same crime. 46 S.W.3d at 257.

■■■ Here, the main issue is whether the evidence is sufficient to show appellant was "convicted" of a prior felony or had a prior "conviction," not whether appellant received sufficient notice of the prior conviction upon which the State relied to enhance punishment. Appellant's challenge to the State's evidence to prove "conviction" or "convicted" does not call for a materiality determination because, as a matter of law, appellant's prior juvenile felony adjudication cannot be considered a conviction, and thus, cannot be used to enhance punishment.

■■■ For enhancement purposes, the State has the burden of proving appellant had a prior conviction. *See* TEX. PEN.CODE ANN. § 12.42(b), (c) (Vernon Supp.2002) (punishment range may be increased if it is shown "that the defendant has been once before convicted of a felony"). However, as a matter of law, appellant's No-

---

5. Apparently, in the off-the-record discussion, the trial court decided to amend the jury charge.

vember 1995 juvenile felony adjudication cannot be considered a prior conviction for purposes of enhancement. An order of adjudication is not a conviction of crime except as provided in section 51.13(d) of the family code. TEX. FAM.CODE ANN. § 51.13(a) (Vernon Supp.2002). Under section 51.13(d) of the family code, only a felony adjudication in which a child engaged in conduct that occurred on or after January 1, 1996 can be a final felony conviction for enhancement purposes. *Id.* § 51.13(d); TEX. PEN.CODE ANN. § 12.42(f) (Vernon Supp.2002) (Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 106, 1995 Tex. Gen. Laws 2517, 2591, which added subsection (f), states "this Act applies only to conduct that occurs on or after January 1, 1996"). The November 13, 1995 order of adjudication and judgment of disposition shows appellant committed aggravated robbery on October 10, 1995. Because appellant committed the aggravated robbery before January 1, 1996, appellant's adjudication is not a conviction for enhancement purposes. Accordingly, we conclude, as a matter of law, appellant's prior felony adjudication for aggravated robbery does not constitute a "final felony conviction" for enhancement purposes. Consequently, the State has presented no evidence showing appellant was "convicted" or had a prior "conviction," and therefore, the State's evidence is legally insufficient to support the jury's finding of true to the enhancement paragraph.

■ Next, we consider whether appellant was harmed by the State's failure to prove appellant had a prior conviction. Except for certain federal constitutional errors labeled as "structural," no error is

categorically immune to a harmless error analysis. *High v. State,* 964 S.W.2d 637, 638 (Tex.Crim.App.1998) (per curiam) (citing *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997)).[6] Under rule 44.2 of the rules of appellate procedure, a different analysis applies to constitutional and nonconstitutional error. TEX.R.APP. P. 44.2(a), (b). For constitutional error subject to harmless error review, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a). "Any other error, defect, irregularity, or variance that does not affect a substantial right must be disregarded." TEX.R.APP. P. 44.2(b).

■ Because appellant has a statutory right not to have his primary offense enhanced by a juvenile adjudication that occurred before January 1, 1996, we must determine harm under the standard for nonconstitutional errors. A substantial right is affected when the error has a substantial and injurious effect or influence on the jury's verdict. *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001). In determining whether the error affected the jury's verdict, we must examine the entire record. *See Schutz v. State,* 63 S.W.3d 442, 444 (Tex.Crim.App.2001).

As explained above, the State presented no evidence that appellant had a prior final felony conviction. In closing arguments, appellant's counsel argued the State did not prove beyond a reasonable doubt appellant was indicted and convicted as alleged in the enhancement paragraph. The

---

**6.** In *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United States Supreme Court stated that the total deprivation of the right to counsel at trial, a judge who is not impartial, the right to public trial, the right to self-

representation, and the unlawful exclusion of members of the defendant's race from a grand jury were constitutional deprivations with a similar structural defect affecting the framework within which the trial proceeds.

State argued the law allows it to use juvenile commitments to the Texas Youth Commission to enhance punishment. The State further argued it did not matter whether the paragraph said "conviction" instead of "adjudication" because the question was whether appellant was on notice that the State was going to use the prior felony offense to increase appellant's punishment. The trial court instructed the jury in each charge that the minimum penalty was fifteen years if it found the enhancement paragraph true and five years if it found the enhancement paragraph not true.

Under the facts of this case, it did matter whether appellant was convicted or adjudicated. As a matter of law, appellant's prior juvenile felony offense was not a final felony conviction; thus, the jury considered a prior offense that was unavailable for enhancement purposes. The enhancement paragraph subjected appellant to a harsher punishment range in that the minimum punishment for each first-degree felony was increased from five to fifteen years. After the jury found the enhancement paragraph true, it assessed punishments at the minimum or close to the minimum number of years rather than the maximum. Without the enhancement paragraph, it is possible that the jury may have assessed a lower punishment. Consequently, we cannot conclude this error did not have a substantial and injurious effect or influence on the jury's verdict. Moreover, if the error was a violation of appellant's constitutional rights, we cannot conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment. Accordingly, we conclude the error was not harmless.

We resolve the fourth issue in appellant's favor; consequently, we need not address appellant's remaining issues. *See* Tex.R.App. P. 47.1. Because as a matter of law the prior juvenile adjudication for aggravated robbery does not constitute a final felony conviction for enhancement purposes, we reverse the trial court's judgments only on the basis of error made in the punishment stage of trial, and we remand all three cases for new punishment hearings consistent with article 44.29(b) of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 44.29(b).