# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00214-CR
NO. 03-14-00215-CR
NO. 03-14-00216-CR
NO. 03-14-00217-CR

**Jonathan Matthew Porterie, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-13-0920, CR-13-0076, CR-13-0077 & CR-13-0078
HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jonathan Matthew Porterie was charged under four indictments: one for burglary of

a habitation with intent to commit improper photography and three for burglary of a habitation with

intent to commit or attempt to commit sexual assault. *See* Tex. Penal Code §§ 21.15 (prohibiting

improper photography or visual recording), 22.011 (criminalizing sexual assault), 30.02 (setting out

crime of burglary). For each offense, a different victim was alleged. After a trial, the jury found

Porterie guilty of the lesser included offense of improper photography and found him guilty of

burglary in the remaining three counts. In six issues on appeal, Porterie challenges all four of his

convictions. We will affirm his three convictions for burglary, but we will reverse his conviction

for improper photography and vacate that conviction.

## DISCUSSION

**Improper Photography**

In his first and second issues, Porterie challenges his conviction for improper photography. Specifically, he asserts that the portion of the statute prohibiting improper photography under which he was convicted is facially unconstitutional and that the district court erred by refusing to allow two witnesses to testify under Rule of Evidence 412. *See* Tex. R. Evid. 412 (governing evidence of previous sexual conduct in criminal cases).

Under this count, Porterie was convicted under subsection 21.15(b)(1) of the Penal Code, which provides as follows:

> (b) A person commits an offense if the person:
>
> > (1) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another at a location that is not a bathroom or private dressing room:
> >
> > > (A) without the other person's consent; and
> > >
> > > (B) with intent to arouse or gratify the sexual desire of any person[.]

Tex. Penal Code § 21.15(b)(1). After Porterie was convicted, the court of criminal appeals held that the portion of the statute set out above was facially unconstitutional. *See Ex parte Thompson*, 442 S.W.3d 325, 351 (Tex. Crim. App. 2014). Specifically, the court held "that Section 21.15(b)(1) of the Texas Penal Code, to the extent it proscribes the taking of photographs and the recording of visual images, is unconstitutional on its face in violation of the Free Speech clause of the First Amendment." *Id.* In light of that ruling, the State agrees with Porterie that his conviction for improper

2

photography must be reversed.  *See Sanchez v. State*, 120 S.W.3d 359, 366 (Tex. Crim. App. 2003) (explaining that systemic errors cannot be waived or forfeited); *Schuster v. State*, 435 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (determining that conviction under statute that court of criminal appeals determined was unconstitutional is systemic error); *see also Ex parte Chance*, 439 S.W.3d 918, 919 (Tex. Crim. App. 2014) (Cochran, J., concurring) (explaining that because unconstitutional statutes are void from inception, "a person may always obtain relief from an indictment or conviction based on a penal statute that has been previously declared unconstitutional," including through direct appeal and habeas corpus proceedings, and that "[a]n unconstitutional penal statute is void for all comers, those who have already been convicted of it before it was declared void, as well as those prosecuted under it after it had been declared void").

Accordingly, we sustain Porterie's first issue on appeal and reverse his conviction for improper photography.  In light of this determination, we need not reach Porterie's second issue.

**Three Convictions for Burglary**

In his remaining four issues, Porterie challenges the legal sufficiency of the evidence regarding his three burglary convictions.  All three counts alleged that Porterie committed burglary with the intent to commit or attempt to commit sexual assault.  Under the Penal Code, a person commits burglary if, "without the consent of the owner, the person . . . enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault" or "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault."  Tex. Penal Code § 30.02(a)(1), (3).  Further, the Code specifies that "'[c]onsent' means assent in fact, whether express or apparent" and that "'[e]ffective consent' includes consent

3

by a person legally authorized to act for the owner." *Id.* § 1.07(11), (19). "The testimony of an owner that she did not give permission to enter the habitation is sufficient to establish the absence of effective consent" regardless of whether the door was unlocked or open. *Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.).

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

All three crimes were alleged to have been committed against residents living in the same apartment complex; however, each indictment alleged a different victim who lived in a different unit. Each apartment unit had a common area with multiple bedrooms attached, and each bedroom was leased out to a particular individual. Accordingly, each bedroom had its own unique lock as well as its own bathroom. At the time that the first two offenses were alleged to have occurred, Porterie was a resident at the complex, but he was evicted from the complex prior to the

final alleged offense. In fact, the eviction letter sent to Porterie specified that he was no longer welcome at the apartment complex, including the common areas, and that if he returned to the property, he would be "arrested and charged with unlawful trespassing." Because the victims and the facts underlying each case differ, we will address the three convictions separately.

*First Burglary Conviction*

In his third issue on appeal, Porterie contends that the evidence is legally insufficient to show that he was guilty of burglary "because the State offered no evidence that [he] intentionally or knowingly entered [Alexandria Lasley's] room without her effective consent."

As support for his argument, Porterie points to testimony demonstrating that he and Lasley had known each other for a while; that Lasley had dated his best friend Dashawn Singletary; that one of Lasley's roommates, Jasmine Haynes, regularly invited him and Singletary into the apartment; that he had spent the night in the apartment on more than one occasion; and that prior to the alleged incident, he had not made any sexual advances toward Lasley. Moreover, he references testimony from Haynes in which she stated that in general the bedroom doors to the individual rooms in her unit were unlocked and that Lasley's door was usually left open, and Haynes also testified that Lasley "exaggerates sometimes . . . and can be a little dramatic." Furthermore, he notes testimony from Haynes providing that on the night in question, he and Haynes had been drinking at a bar, that Haynes invited him to stay the night inside the apartment after returning home late that night, and that prior to the incident, he got up to go to the bathroom.[1] In addition, he highlights the

---

[1] In her testimony, Haynes also stated that she and Porterie were involved in a sexual relationship.

5

portions of Haynes's testimony stating that after the alleged incident, he appeared confused and drunk. After mentioning the testimony describing him as drunk and confused, Porterie emphasizes testimony establishing that the apartment that he was living in at the time had the same layout as the one that Lasley and Haynes were living in and that his bedroom was in the same location as Lasley's, and in light of that, he asserts that the evidence shows that he "may have been confused as to where he was." Finally, he urges that no evidence was introduced establishing that he unlocked Lasley's door or forced it open and that "nothing in the process of entering [Lasley's] room would have been any different than any other occasion on which he might have entered the room with permission."

However, in addition to the testimony referenced by Porterie, other testimony was introduced during trial indicating his guilt. Specifically, although Haynes testified that the bedroom doors were generally unlocked, Lasley testified that the roommates had an agreement to let each other know when a non-roommate was in the apartment and to communicate with one another before entering another roommate's bedroom. She also clarified that she expected any visitors to knock before entering her room. Further, Lasley explained that she had never given Porterie permission to enter her room.

Regarding the incident, Lasley related that she came home from work around 4:30 in the morning. Moreover, she testified that although she did not lock it, she did close her bedroom door when she arrived home. She also stated that she locked the front door to the apartment before going to bed. Next, she related that while she was asleep, she felt a hand on her leg, which woke her up. When describing the feeling, she explained that at first she thought that she was having a bad dream and "shook it off" but that she later felt the hand touch her leg higher on her inner thigh and

6

move closer to her vagina. Then, she revealed that she started screaming, looked around, saw Porterie near her leg, realized that he was naked, and ordered him to leave. Further, she described how Porterie asked her not to tell Singletary, who was his friend and her ex-boyfriend, about the incident before leaving the apartment.

In addition, exhibits were introduced during trial showing text messages that were sent from Porterie's phone to Lasley's and Singletary's phones after the incident. In one of his texts to Lasley, Porterie stated that "I can assure that nothing in that nature will ever occur again . . . that was just a horrible decision." In his texts to Singletary, Porterie wrote, "Bro I was out of line to every extent [and] I fucked up once and it has potential to do a lot of damage to me. I was fucked up that night, out of control and I'm sorry bro. I touched her leg that night. That's it. I woke up at [Haynes's] on the floor butt ass naked. I don't remember shit from [b]efore that."

In light of all of the evidence summarized above as well as the reasonable inferences that the factfinder could have made from that evidence and given our standard of review for legal-sufficiency challenges, we conclude that the evidence is legally sufficient to support the jury's determination that Porterie entered Lasley's room without her effective consent. Accordingly, we overrule Porterie's third issue on appeal.

*Second Burglary Conviction*

In his fourth issue on appeal, Porterie asserts that the evidence is legally insufficient to show that he "committed a burglary against [Jacie] Bell because the State offered no evidence to support [his] identity as the person involved in [the] case." When challenging the evidence, Porterie argues that even though he "was not the only black male who lived at the complex," the police "did

7

not detain, talk to, take pictures of, or in any other way investigate any other black males." Moreover, he notes that there were inconsistencies with Bell's description of the clothing that the alleged offender was wearing that night and the clothes that he was wearing when he was arrested. Specifically, Porterie points out that in her description to the police, Bell stated that the offender was wearing plaid shorts with light colors and remarks that when the police found him, he was wearing "Carolina blue basketball shorts" that were not plaid.

During the trial, Bell testified regarding the events in question. Specifically, she stated that late at night she woke up and saw Porterie "standing at the foot of [her] bed. And [she] jumped, and then about instantaneously, he crouched down at the foot of [her] bed" approximately one foot from her. Next, she related that she repeatedly asked him to leave, that she picked up her phone to call 911, that the light from the phone lit up the room, and that he ran downstairs once the light came on. Moreover, she specified that even before her phone illuminated the room, she was still able to see Porterie's face because there was a streetlight outside her window and recalled that she was able to observe that he "was a black male who was not wearing a shirt." Further, she testified that she gave a description of him to the police when she called 911, repeated that description to the responding officers, and identified him that same night. Finally, Bell identified Porterie in open court as the man that she had seen in her bedroom and explained that prior to the incident, she did not know Porterie or realize that he lived at the complex.

In addition to Bell's testimony, Officer Kassondra Raven testified that she responded to a 911 call pertaining to Bell but that other officers had arrived on the scene before her. In addition, she testified that by the time she arrived at the complex, another officer had already detained Porterie

8

after observing him running from the direction of Bell's apartment. Further, she related that when she arrived on the scene and talked with Bell about the incident, Bell described the offender as a "thin black male with no shirt on with a little bit of hair" who was wearing "light-colored plaid shorts." After inspecting the scene, Officer Raven asked Bell to accompany her outside where the other officers were questioning Porterie to see if he was the man that she had seen in her apartment. According to Officer Raven, Bell identified Porterie as the offender. Further, Officer Raven explained that to be absolutely certain that Porterie was the right person, she went over to Porterie, took a photo of him, and showed the picture to Bell and that Bell again identified Porterie as the person that had been in her home.[2] That picture was admitted as an exhibit during trial and depicted an African-American man wearing shorts, but no shirt.

In light of all of the evidence summarized above as well as the reasonable inferences that the factfinder could have made from that evidence and given our standard of review for legal-

[2] When making his sufficiency challenge, Porterie points out that the officers did not show Bell any photos of anyone else and likens Officer Raven's showing Bell his photo to an improper photographic lineup. *See Simmons v. United States*, 390 U.S. 377, 383 (1968) (noting danger of misidentification that can result from police only showing witness one person's photo that generally resembles description of suspect or from police emphasizing one person's photo in some way). However, we note that during trial Porterie did not object to the propriety of Officer Raven showing Bell the photo of him or object to her identification of him in the court room. *See Perry v. State*, 703 S.W.2d 668, 670-71 (Tex. Crim. App. 1986) (finding waiver because defendant failed to object or complain about out-of-court-identification procedure at trial); *Wallace v. State*, 75 S.W.3d 576, 584 (Tex. App.—Texarkana 2002) (noting that failing to object to in-court identification waives any complaint on appeal), *aff'd on other grounds*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *Henderson v. State*, 82 S.W.3d 750, 752 (Tex. App.—Corpus Christi 2002, pet. ref'd) (determining that failure to object to testimony regarding identification procedure and failure to file motion to suppress regarding identification resulted in waiver); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (explaining that in legal-sufficiency reviews, appellate courts consider all of evidence regardless of whether it was properly or improperly admitted). In any event, we note that Officer Raven explained in her testimony that she only showed Bell the photo of Porterie after Bell had gone outside and positively identified Porterie as the individual that she saw in her apartment.

sufficiency challenges, we conclude that there is legally sufficient evidence identifying Porterie as the individual who burglarized Bell.[3] Accordingly, we overrule Porterie's fourth issue on appeal.

*Third Burglary Conviction*

In his fifth issue on appeal, Porterie urges that the "evidence is insufficient to show that [Porterie] committed a burglary against [Cerise Christian Tippens] because the State offered no evidence that [Porterie] lacked Tippens's effective consent to enter her room." *See* Tex. Penal Code § 30.02. When making this argument, Porterie points to testimony indicating that he knew Tippens's roommates, LeTesha McDuffie and Dahlia Zuniga, through his friendship with Haynes. In addition, he relies on testimony from McDuffie indicating that he often came to the apartment and visited with everyone, including Tippens. Further, he notes that Zuniga and McDuffie testified that they normally did not lock the front door and had an open door policy with friends, including him.

Regarding the events leading up to the incident, Porterie notes that on the night in question, Tippens had gone out drinking with McDuffie and Haynes and that when they came home, they saw him in the parking lot of the apartment. Further, he relies on testimony from Haynes stating that she saw him walk with McDuffie and Tippens towards their apartment. In addition, he points

---

[3] On appeal, Porterie insists that when reviewing the sufficiency of the evidence in this issue, this Court cannot consider the evidence regarding the other two alleged burglaries because the other alleged crimes are too dissimilar. Specifically, he urges that the allegations against him in the count pertaining to Bell, unlike the other two counts, do not specify that he knew the victim beforehand or that he had been in the apartment previously. In addition, Porterie notes that in this count, unlike the others, he was alleged to have entered through the backdoor of the apartment. As set out above, we believe that the evidence is sufficient even without considering the evidence regarding the other two burglaries. However, we do note that although there are some dissimilarities, there are some common elements to all three, including that all three crimes involved victims who were similar in age and occurred at night, at the same apartment complex, and within a few weeks of one another.

10

to testimony from Tippens in which she stated that she was drunk on the night in question, that she did not remember the ride home, and that her first memory after arriving home was throwing up in her bathroom. Moreover, Porterie highlights that Tippens explained in her testimony that after she noticed him inside her bedroom, he mentioned that he was there to protect her. Finally, Porterie notes that Tippens did not specifically state in her testimony that he "should not have been there or that she was surprised or upset that he was there."

However, in addition to the evidence discussed above, other testimony was presented that inculpated Porterie. Specifically, McDuffie testified that on the night in question she saw Porterie arrive at the complex when she and Tippens were driving home and related that she reminded him that he was not allowed at the complex. Moreover, McDuffie testified that after their conversation, she parted ways with Porterie, that she thought he was going to Singletary's apartment, that she followed Tippens into the apartment, that she closed the front door after entering the apartment, that no one came in after her, that she did not invite Porterie into the apartment, and that she did not see Porterie in the apartment when she left later. Furthermore, Tippens's other roommate, Zuniga, testified that Tippens is a very reserved person and that Tippens always kept her door closed and locked.

In addition, although there was testimony that Porterie had previously been inside the apartment to visit with Tippens's roommates, Tippens testified that she never told Porterie that he could enter her room and that people did not have free access to her room. Moreover, after explaining that she had been drinking with her friends on the night of the incident, she related that she woke up in her bathroom after getting sick, saw Porterie in the doorway to her bathroom, and questioned him about why he was in her room before losing consciousness. In addition, she stated

11

that after she lost consciousness, she awoke on her bed and realized that Porterie was touching her before losing consciousness again. Furthermore, she revealed that she awoke to discover that Porterie had placed his penis inside her vagina and that she "kept telling him he was hurting [her]" but that he did not stop. Finally, Tippens recalled that when she woke up the next morning, she discovered that she was naked even though she never sleeps naked and called the police after realizing what had happened.

During the trial, a recording of the 911 call that Tippens made was played for the jury and several witnesses testified regarding the events that occurred after the offense, including Officer Lindy Wright, Noella Hill, and Diana Morales. On the recording, Tippens explained that she had been sexually assaulted, that she knew the perpetrator but did not know his last name, and that he was not supposed to be at the apartment complex because he had been evicted for entering another woman's apartment without permission. In her testimony, Officer Wright testified that she responded to the 911 call regarding Tippens and that Tippens identified Porterie as the offender. After Officer Wright testified, Hill explained that she is a sexual-assault nurse examiner and that she examined Tippens after the incident. When describing the exam, Hill stated that Tippens "was crying, sobbing, very jumpy. When the door shut and opened, if anybody had to go through it, she would jump immediately." Further, Hill read from the report that she made while examining Tippens and related statements that Tippens made during the exam, including the statement that she "told him it hurt, and he did not stop." Moreover, Morales testified that she is a DNA analyst, that she performed tests on samples collected from Tippens's vagina, and that the testing revealed the presence of sperm. In addition, Morales explained that based on the results of the testing, Porterie could not be excluded as a contributor to the samples.

12

Finally, various text messages sent from Porterie's phone to Tippens's phone after the alleged incident were admitted as exhibits. Although Porterie characterized the event as consensual in a text asking her to drop the charges, he also stated, "I don't know how to express how sorry I am . . . I didn't mean for any of this to happen. I wouldn't have done it sober."

Given our standard of review, all of the evidence summarized above, and the reasonable inferences that the jury could have made from the evidence, we must conclude that the evidence is legally sufficient to support the jury's determination that Porterie entered Tippens's room without her effective consent. Accordingly, we overrule Porterie's fifth issue on appeal.

In his sixth issue, Porterie presents a limited challenge to the sufficiency of the evidence supporting a determination that he sexually assaulted Tippens. Specifically, he argues that in the event that this Court sustains his fifth issue regarding whether he had consent to enter Tippens's room, we must then decide whether there is sufficient evidence to support a conviction for the lesser-included offense of sexual assault, and he insists that "the State offered no evidence that, from [Porterie]'s perspective, he lacked Tippens's consent to engage in sexual activity with her." As support for his assertion that the evidence is insufficient, Porterie primarily argues that Tippens's recollections of the event are incomplete due to her intoxication and relies on testimony from Tippens in which she stated that she remembered briefly talking with him while she was in the bathroom prior to the incident when she asked him why he was there and that she could not specifically remember giving or denying her consent on the night in question.

Given that Porterie has only asked this Court to reach this issue in the event that we reverse his conviction for burglary and have to determine whether there is sufficient evidence to

13

support the lesser-included offense, it is not entirely clear that Porterie has lodged an independent sufficiency challenge against the evidence related to the sexual-assault component of his conviction for burglary. *See* Tex. Penal Code § 30.02(a)(3). In any event, we note that the evidence summarized above is sufficient to support a determination that Porterie sexually assaulted Tippens. *See id.* § 22.011(a)(1)(A), (b)(3), (5) (explaining that person commits sexual assault if he "intentionally or knowingly . . . causes the penetration of the . . . sexual organ of another person by any means, without that person's consent" and that act is without consent if "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist" or if "the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring"); Tex. Code Crim. Proc. art. 38.07(a) (providing that conviction for sexual assault "is supportable on the uncorroborated testimony of the victim"); *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (explaining that victim's testimony was sufficient to establish identity of attacker and act of penetration); *Sims v. State*, 84 S.W.3d 768, 774 (Tex. App.—Dallas 2002, pet. ref'd) (upholding conviction when victim identified defendant as attacker and when other evidence linked defendant to assault).

For these reasons, we overrule Porterie's sixth issue on appeal.

## CONCLUSION

Having sustained Porterie's first issue on appeal, we reverse his conviction for improper photography and vacate that conviction. *See* Tex. R. App. P. 43.2. Having overruled Porterie's third through sixth issues, we affirm his three burglary convictions.

14

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

NO. 03-14-00214-CR:  Reversed and Vacated
NO. 03-14-00215-CR:  Affirmed
NO. 03-14-00216-CR:  Affirmed
NO. 03-14-00217-CR:  Affirmed

Filed:   March 27, 2015

Do Not Publish