Aaron HALL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–02–01167–CR, 01–02–01168–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 13, 2004.

Aaron James Hall, Beeville, TX, Michael P. Fosher, Tyrone C. Moncriffe, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney-Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Division, Peyton Z. Peebles, III, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Two separate indictments charged appellant, Aaron Hall, with the felony offenses of murder and conspiracy to deliver over 400 grams of cocaine. In a single trial, a jury convicted appellant of both offenses. Appellant pleaded true to the single enhancement paragraph in each indictment, and the jury assessed punishment at 65 years' confinement for the murder, and 30 years' confinement and a $5,000 fine for the conspiracy. In five issues under each appellate cause number, appellant contends that (1) the evidence is legally and factually insufficient to support convictions for murder and conspiracy, (2) the trial court abused its discretion by admitting certain autopsy photographs that were more prejudicial than probative, (3) appellant was selectively prosecuted, and (4) appellant's punishment enhancement paragraph alleged a prior juvenile adjudication that was not a final conviction. We affirm.

### Background

Appellant was employed as a valet at a nightclub that Christian Alvarado frequented. Appellant told Christian that he had friends who wanted to purchase two kilos of cocaine. Appellant and Christian agreed that, after appellant acquired $32,000 cash money from his friends, appellant would count the money and proceed alone to bring the money to Christian. Christian would then count the money, and, if there was $32,000, would give the cocaine to appellant.

On the day the cocaine transaction took place, appellant arrived at the agreed-upon location, a 24–Hour Fitness parking lot. He was driving a white sedan. Two men followed appellant in a new convertible Jaguar. Christian, who was in his truck with Eric Alvarez, admonished appellant that he was supposed to come alone. Appellant responded that the men in the Jaguar just wanted to make sure that everything went smoothly because the transaction involved a lot of money. To demonstrate that they were each ready to make the exchange, Christian displayed the cocaine to the men in the Jaguar, and the driver of the Jaguar showed a closed Crown Royal bag that appeared to be full of cash money. The men agreed to move the transaction to the parking lot of a Taco Cabana Restaurant on Interstate 10.

At the Taco Cabana parking lot, appellant parked his sedan and took the Crown Royal bag from the two men in the Jaguar. Appellant took the bag to Eric, so that Eric could count the money. At appellant's request, Christian handed a gym bag containing two kilos of cocaine to appellant, who handed the gym bag to the men in the Jaguar. Suddenly, the Jaguar left the parking lot. When Eric finally untied the many knots on the Crown Royal bag and opened it, he discovered a shortage in the money, and said, "We just got jacked"

Eric confronted appellant with appellant's previous assurances that the money was all there, and asked him what was happening. Appellant denied knowledge of what was transpiring, said that he had a family and children, and asked if he could leave. Christian and Eric instructed appellant to call the men who had stolen the cocaine, but the men did not answer appellant's telephone calls. Eric took appellant's keys from the ignition of appellant's sedan and threw the keys into Christian's truck. Christian and Eric told appellant to take them to the residence of the two men so that they could recover their cocaine. They reassured appellant that they would let him go if he had nothing to do with the theft.

As Christian drove his truck, Eric rode in the front passenger seat and appellant rode in the back seat. Eric used his mo-

bile telephone to call "Smiley" for "reinforcement," and informed him that the cocaine had been stolen. While Christian drove, appellant fired his gun, striking Eric in the back of the head and causing him to fall forward and drop his telephone. Christian and appellant struggled over appellant's gun until Christian jumped out of the moving truck. Appellant shot Eric in the back of the head in close proximity to the first gunshot wound, and then fled in the truck. Appellant abandoned the truck, leaving a chunk of cocaine next to Eric's deceased body. According to Houston Police Department Detective Brian Harris, the cocaine left at the scene was intended as "somebody sending a message."

### Appellant's Testimony

Appellant admitted his participation in the cocaine transaction, but denied knowledge of the underpayment of money by the two men in the Jaguar. Appellant claimed that Eric and Christian were the aggressors and took his car keys and forced him into the truck at gunpoint. Appellant testified that, while Christian drove the truck, Christian threatened appellant with the firearm, and appellant grabbed Christian's arm, causing the gun to discharge three times during the struggle over the gun. Appellant claimed that he opened the driver's side door of the truck during the struggle, ejected Christian and the gun from the truck, and then fled in the truck. Appellant asserted that he received a gunshot wound to his hand during the struggle.

### Sufficiency of the Evidence

■ In his first and second points of error for each of his convictions, appellant contends that the evidence is legally and factually insufficient to support his convictions for murder and conspiracy to deliver cocaine. In assessing legal sufficiency, we determine whether, based on all of the record evidence, viewed in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

■ In reviewing factual sufficiency of the evidence, we consider all of the evidence in a neutral light. *Swearingen*, 101 S.W.3d at 97. We must reverse a conviction if the proof of guilt is so weak as to undermine confidence in the jury's determination, or if the proof of guilt, although adequate if taken alone, is greatly outweighed by the proof of innocence. *Id.* Although we may disagree with the jury's verdict, we must defer to the jury's determination of the weight and credibility of the evidence and will reverse the jury's verdict only to avoid manifest injustice. *Id.* When reviewing the sufficiency of evidence, we remain mindful of the jury's role as the exclusive judge of the credibility of witnesses and the weight to give their testimony. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex.Crim.App.2002).

### The Murder Conviction

■ In his first two points of error concerning his murder conviction, appellant contends that the evidence is legally and factually insufficient to establish murder because Eric was killed as a result of the gun's discharges during the struggle with Christian, and therefore, that the State failed to prove that appellant had the requisite intent to commit murder. Appellant further challenges the sufficiency of the

evidence by asserting that Christian is not worthy of belief because he lied multiple times to the police,[1] and the physical evidence is more consistent with appellant's version of the shooting.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). Viewed in the light most favorable to the verdict, a rational jury could have determined the following from the evidence. First, appellant was a knowing participant in the theft of the cocaine because he falsely represented to Christian and Eric that he had counted the money and that it was all there. Second, appellant brought the men in the Jaguar to the transaction to assist him in the theft of the cocaine. Third, appellant went to the transaction armed with a firearm. Fourth, appellant sat in the back seat of Christian's truck to position himself better for the assault of the two men in the front seat. Fifth, appellant fired his gun, initially striking Eric, and, after the struggle over the gun and Christian's departure from the truck, appellant shot Eric again. Sixth, Eric was shot twice in the back of the head with wounds in close proximity to each other. Seventh, appellant left a piece of crack cocaine near Eric's deceased body as a message to other drug dealers about the killing. We conclude that, from this evidence as viewed in the light most favorable to the verdict, a rational jury could have determined that appellant conspired with the men in the Jaguar to steal two kilos of cocaine from Christian and Eric and that appellant murdered Eric follow-

ing the theft. *See Swearingen,* 101 S.W.3d at 95.

In our neutral review of the evidence, appellant asserts that the physical evidence is inconsistent with his guilt, that Christian is incredible as a matter of law and that DNA evidence supports his innocence. Contrary to appellant's assertions, the physical evidence is consistent with his guilt. Because of the proximity and trajectories of the gunshot wounds, as described by the medical examiner, a rational jury could have found that the gunshots were not fired inadvertently during a struggle. Moreover, the jury could have reasonably found that the blood splatter and blood transfer evidence in the truck established that when Eric was shot, he was leaning across the front seat of the truck with his head near the open driver's door. A rational jury could have also found that the blood-splatter expert's testimony is consistent with Christian's testimony that he heard a gunshot after he jumped from the truck and then saw a hand close the door of truck. The chunk of cocaine left near Eric's body is further physical evidence that suggests that Eric was murdered for his role in the drug transaction, rather than as a result of an inadvertent discharge.

Appellant also claims that his tissue and DNA, which were recovered in Christian's truck, indicate that he is not guilty of murder because they confirm his story that he was wounded in a struggle with Eric over the gun. Because there is no dispute that a struggle over the gun occurred, the tissue and DNA evidence are not inconsistent with Christian's testimony or with appellant's guilt for murder.

Appellant's contention that he is more credible than Christian as a matter of law

---

1. Although Christian initially claimed to police that he was robbed of his truck, he later admitted that he was involved in a drug transaction, but he omitted details such as information about the men in the Jaguar. Christian told the complete story to "Smiley" the next day, and to prosecutors and police months later.

is unfounded. Both appellant and Christian had motives to lie and were impeached when they testified. Appellant's credibility was impeached by evidence that he never reported the incident to the police, never received medical treatment for the alleged gunshot wound to his hand, never recovered his sedan from the parking lot, was arrested while hiding in a closet at a friend's house, and had previously been convicted of the felony of forgery. Christian was impeached with his untruthful statements to police concerning the shooting and with evidence that he was given use immunity for his testimony concerning his participation in the delivery of cocaine to the men in the Jaguar. Moreover, in exchange for his testimony in court, Christian was given an agreed plea-bargained sentence of five years' deferred adjudication for an aggravated assault that was unrelated to the cocaine transactions involving appellant. The jury heard appellant's claims that Eric took his keys from him, that he appeared surprised when the Jaguar left the parking lot, and that Eric was inadvertently killed during a struggle over Christian's gun, but declined to believe appellant.

■ We leave credibility assessments of the witnesses to the jury. *See Vasquez,* 67 S.W.3d at 236. We will not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Id.* Moreover, in addition to the physical evidence discussed above, there was also the testimony from "Smiley," who heard the killer say over Eric's cellular phone after Eric was shot, "They tried to shaft me. I killed one of them. The other one got away."

We conclude from our neutral examination of the evidence that the proof of guilt is neither so obviously weak as to undermine confidence in the jury's determination nor so greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *See Swearingen,* 101 S.W.3d at 97. Accordingly, we conclude that the evidence is factually sufficient to support appellant's conviction for murder. We overrule appellant's first two points of error concerning his murder conviction.

### The Conspiracy to Deliver Cocaine Conviction

■ In his first two points of error regarding his conspiracy conviction, appellant contends that the evidence is legally and factually insufficient to establish his guilt because conspiracy requires at least two guilty parties under Texas law, but he was the only party charged with conspiracy here.

A person commits criminal conspiracy if, with intent that a felony be committed, (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and (2) he or one or more of them performs an overt act in pursuance of the agreement. TEX. PEN.CODE ANN. § 15.02(a) (Vernon 2003). It is no defense to prosecution for criminal conspiracy that one or more of the coconspirators has not been prosecuted or convicted, has been convicted of a different offense, or is immune from prosecution. TEX. PEN.CODE ANN. § 15.02(c)(3) (Vernon 2003).

By his own admission, appellant agreed with Eric and Christian to sell two kilos of cocaine for $32,000 to a buyer whom he had acquired. The conspiracy culminated in the exchange of the two kilos of cocaine for money, albeit an insufficient amount of money. Of those involved in the delivery of cocaine, only appellant was charged with conspiracy.[2] Although no other person

2. The record shows that no one else could have been charged by the State. The two men in the Jaguar were never identified by police officers. Eric was deceased. Christian received use immunity for his testimony in

was prosecuted, that is no defense to appellant's conspiracy conviction. *See* Tex. Pen.Code Ann. § 15.02(c)(3).

We conclude that the evidence is legally and factually sufficient to support appellant's conviction for conspiracy to deliver cocaine. We overrule appellant's first two points of error concerning his conspiracy conviction.

## Autopsy Photographs

█ In his third point of error for both of his convictions, appellant contends that the trial court erred by admitting into evidence three autopsy photographs over his rule 403 objection because their prejudicial effect outweighed their probative value.

█ We review decisions by the trial court to admit photographs for abuse of discretion. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex.Crim.App.1999). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403. A rule 403 analysis by the trial court should include, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time that the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Reese v. State*, 33 S.W.3d 238, 240–41 (Tex. Crim.App.2000).

Appellant does not challenge that the three photographs marked as State's Exhibits 55, 56, and 57, were probative, but challenges the trial court's ruling under the remaining *Reese* factors. Appellant contends that the three autopsy photographs had the potential to impress the jury in some irrational, but nevertheless indelible, way because appellant did not

"scalp" the victim or remove the victim's brain from his skull.

█ Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Salazar v. State*, 38 S.W.3d 141, 151 (Tex.Crim.App.2001) (quoting *Rojas v. State*, 986 S.W.2d 241, 249 (Tex.Crim.App. 1998)). When photographs depict internal organs that have been removed to portray the extent of the injury to the organs themselves, the photographs are not considered to be depictions of mutilation of the victim by autopsy. *Salazar*, 38 S.W.3d at 151–52. Photographs of internal organs that have been removed from the victim's body during autopsy can be highly relevant to explain the manner of death. *Ripkowski v. State*, 61 S.W.3d 378, 392–93 (Tex.Crim.App.2001).

State's Exhibits 55 and 56 are photographs that show the top and bottom of the skull after the brain was removed. The medical examiner testified that the photographs show the two different gunshot entrance wounds and the resulting fractures that radiated from the wounds. State's Exhibit 57 is a view of the top of the brain. According to the medical examiner, the photograph demonstrates the pathway of the two different bullets through the brain, with metal rods in place to indicate the direction of the travel of the projectiles. Although the autopsy photographs are graphic, they depict the damage caused internally to the skull and brain by appellant's gunshots. *See Salazar*, 38 S.W.3d at 151–52. These photographs were highly relevant to explain the manner of death by documenting the entrance wounds, the proximity of the wounds to each other, the trajectory of the bullets, and the resulting fractures. *See Ripkowski*, 61 S.W.3d at 392–93. We con-

appellant's trial, and no other evidence established Christian's guilt for the delivery.

clude that the jury would not have been prejudiced in some irrational, but nevertheless indelible way by viewing autopsy photos of the deceased's head under these circumstances.

Appellant further contends that it took an undue amount of time to lay the foundation for the admission of the three photographs and to develop the medical examiner's testimony concerning the photographs. The State laid the foundation for the three photographs concurrently with the foundation for other State's Exhibits that were admitted without objection. Accordingly, it took no additional time to lay the foundation for the three objected-to photographs. The medical examiner's testimony concerning the three photos constitutes six pages out of the total of 29 pages of his testimony, and out of the hundreds of pages of testimony in the record. We conclude that the testimony concerning the three photographs did not unduly lengthen the trial.

Finally, appellant contends that because he did not contest the ultimate issue that the complainant had been killed by two gunshots to the back of the head, and the State had other convincing evidence to prove what the three photographs conveyed, the State had no need for the three photographs. Appellant's attorney gave a conditional stipulation as follows: "We will stipulate that he [Eric] was killed. And that the person shot him in self-defense." As discussed earlier, the photographs were relevant not only to show the cause of death, but also to demonstrate the manner of the gunfire, such as the proximity of the wounds to each other and the trajectories and paths of the bullets into Eric's head. The three objected-to autopsy photographs were the only photographs that documented the internal autopsy findings of the entry wounds, the fractures caused by the gunshots, the proximity of the wounds to

each other and to the body, and the trajectories of the bullets.

We conclude that the trial court did not abuse its discretion by admitting the three autopsy photographs under these circumstances. We overrule appellant's third point of error for each of his convictions.

### Selective Prosecution

Appellant contends in his fourth point of error for each conviction that he was selectively prosecuted for murder and conspiracy. The heavy burden of proof is on the defendant to establish a prima facie case of selective prosecution. *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim.App. [Panel Op.] 1980). The presumption is always that a prosecution for violation of criminal law is undertaken in good faith and in a nondiscriminatory fashion to fulfill a duty to bring violators to justice. *Id.* To support a defense of selective or discriminatory prosecution, a defendant must make a prima facie showing that (1) although others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his constitutional rights. *Id.*

To preserve a complaint for appellate review, a defendant must object timely to the trial court. Tex.R.App. P. 33.1. In the instant case, appellant made no effort at trial to establish the alleged discriminatory prosecution. *See Gawlik*, 608 S.W.2d at 673. We conclude that nothing is presented for review. *See id.*

We overrule appellant's fourth point of error for each of his convictions.

## Enhancement Paragraph

 In his fifth point of error for each of his convictions, appellant contends that his prior juvenile adjudication did not constitute a final felony conviction, and, thus, could not properly be used to enhance his punishment. The punishment enhancement paragraph had the effect of raising the statutory possible minimum sentence from five years to 15 years. *See* Tex. Pen.Code Ann. § 12.42(c)(1) (Vernon 2003).

Appellant pleaded true to the enhancement paragraph, which alleged, "Before the commission of the offense alleged above, on August 15, 1991, in cause number 73882, in the 315th District Court of Harris County, Texas, the defendant was convicted of Capital Murder, a felony offense." The State introduced a judgment from the 315th District Court, dated August 15, 1991, that ordered appellant to the custody of the Texas Youth Commission (TYC) for a term of 15 years, until appellant turned 17½ years of age, at which time he would be returned to court for a hearing to determine whether he should be released under the supervision of the TYC or transferred to the Texas Department of Corrections.

Appellant asserts that the judgment admitted into evidence concerning his enhancement paragraph establishes that the enhancement paragraph was for a juvenile conviction for a 1991 offense, and under *Sims v. State*, 84 S.W.3d 768 (Tex.App.-Dallas 2002, no pet.),[3] it was invalid for enhancement purposes. Although the State contends that the enhancement paragraph is valid, the State asserts that appellant's plea of true to the enhancement paragraph is alone sufficient to show that he had a prior felony conviction. *See*

*Dinn v. State*, 570 S.W.2d 910, 915 (Tex. Crim.App. [Panel Op.] 1978). We conclude that appellant's plea of true precludes his complaint about the insufficiency of the evidence to establish his enhancement paragraph. *See Dinn*, 570 S.W.2d at 915; *Harrison v. State*, 950 S.W.2d 419, 422 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd).

We overrule appellant's fifth point of error concerning each of his convictions.

## Conclusion

We affirm the judgments of the trial court.

---

**3.** *Sims* held that, as a matter of law, under section 51.13(d) of the Family Code, the appellant's felony adjudication was not a "final felony conviction" because the underlying criminal conduct occurred prior to January 1, 1996. *Sims*, 84 S.W.3d at 780; *see also* Tex. Fam.Code Ann. § 51.13(d) (Vernon 2002). Sims pleaded not true to the enhancement paragraph at his trial. *Sims*, 84 S.W.3d at 778.