Opinion issued February 2, 2006









Opinion issued January 26,
2006






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00415-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



OSCAR TRINIDAD CASTRO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 1004508

 








 

 



MEMORANDUM OPINION

 

          A
jury found appellant, Oscar Trinidad Castro, guilty of the second-degree felony
offense of aggravated assault and assessed punishment at six years’ confinement.  On appeal, Castro contends the evidence is
legally and factually insufficient to support his conviction.  We hold that sufficient evidence supports the
conviction and therefore affirm.

Facts

          In
October 2004, Darsha Lara and her husband, John, stopped at a Chevron station near
the intersection of Lawndale and Broadway in Houston so that John could fill a
tank with air.  Darsha needed to walk her
dog and spotted a patch of grass behind the carwash.  As she approached the grassy area, Darsha
noticed a blue duffel bag, tarp, and box cutter lying on the ground.  Feeling uneasy, Darsha bent down to retrieve
her dog.  She testified that as she
straightened, she felt someone approach her from behind and pull a rope tightly
around her neck.  Although she attempted
to call for help, Darsha lost her ability to breathe for “a few seconds” and
was unable to speak.  Darsha testified
that she was afraid to fall down because she was wearing a back brace, but
eventually she was able to get the rope off and “bump” the assailant, later
identified as Castro, away from her.

Darsha testified that after she broke
free, Castro lay on the ground laughing for a short while.  He then told his dog, which appeared to be a
Rottweiler, to “go get her.”  Darsha
panicked and ran towards her husband. 
Once she made it to safety, Darsha discovered that she had scratches on
her back and “all over” her arms, a rope burn on her neck that was bleeding,
and a “busted mouth.”  In addition, a
replacement partial in her mouth fell out during the scuffle.  Darsha testified that her injuries were
painful and took approximately one week to heal.

          John
testified that while he was filling a tank with air, Darsha came running
towards him from the vicinity of the carwash, crying hysterically.  He noticed that she had a piece of rope
around her neck.  He also observed that
she had rope burns on both sides of her neck, scratches on the back of her
neck, and a “busted lip.”  Darsha told
him that “a man had tried to get her” behind the carwash.  After learning what had happened, John walked
over to the carwash to confront Castro.  Castro
grew belligerent and began cursing Darsha. 
Darsha saw that Castro was holding a broken beer bottle and pleaded with
John to return to their truck.  John
complied and called the police.

          Officers
Anthony Gonzales and Ricardo Cruz of the Houston Police Department responded to
the call.  Officer Gonzales testified
that when they arrived, Darsha was quite “shaken up.”  She had pieces of rope hanging around her
neck, a “busted lip,” blood coming out of her mouth, and scratches on her neck
and arms.  Officer Gonzales asked Darsha
where the suspect had gone, and she pointed to some bushes along a fence near
the carwash.

The officers approached and found
Castro sitting on a tree stump.  Officer
Gonzales told Castro to stand.  Although
he initially ignored the officers, Castro eventually stood and placed his hands
inside his pockets.  Officer Gonzales
instructed Castro to remove his hands from his pockets, but Castro refused.  He became “very irate” and began screaming profanities
directed at Darsha.  After Officer
Gonzales drew his gun, Castro finally removed his hands from his pockets, and
Officer Gonzales observed that Castro had a rope in his hand that was identical
to the rope around Darsha’s neck.  Similar
pieces of rope were dangling from Castro’s pockets.  The officers were finally able to subdue
Castro, handcuff him, and place him in their police car.  Officer Gonzales testified that he recovered both
the rope from Darsha’s neck and the rope from Castro’s pocket, which he
transported to the police station.  The
State introduced the pieces of rope into evidence, and Officer Gonzales
authenticated them.

          Officer
Cruz similarly testified that upon arriving at the scene, he observed that
Darsha had a piece of rope “dangling from her hair, from her chest.”  Castro was extremely uncooperative and made
several derogatory remarks directed at Darsha. 
Officer Cruz also noticed that Castro had a piece of rope dangling from
his right front pocket.

          Castro
testified that on the evening in question, he was sitting on a tire behind the
carwash at the Chevron station near the intersection of Broadway and Lawndale
in Houston, drinking a beer.  His dog,
which is half bulldog and half pitbull, was with him.  Castro saw Darsha approach and watched her
carefully to make sure she did not steal anything from his backpack.  Castro testified that his dog suddenly walked
over to Darsha’s dog, so he rose to follow. 
When Castro’s dog was two or three steps away from Darsha, she heard a
noise and turned, and Castro informed her that his dog does not bite.  Castro testified that Darsha retrieved her
dog, he retrieved his backpack and his dog, and the two went their separate
ways.  As Castro was walking back to the
tire, John approached and asked him what he was doing.  Castro replied that he was getting his bag
and his dog.  The two then had a heated
exchange, after which Castro returned to the tire and sat down.  Five minutes later, the police arrived and
arrested him.  Castro cursed the police
and was angry because he had not done anything wrong.  Castro testified that he sells newspapers for
The Houston Chronicle and that the rope recovered from the scene is the
twine he uses to tie newspapers.  Castro
denied using the twine to choke Darsha.

Analysis

Legal Sufficiency

          Castro
contends the evidence is legally insufficient to support his conviction for
aggravated assault because there is no evidence that Darsha felt pain or
sustained serious bodily injury.  Castro
thus asserts that the jury could not have found the essential elements of aggravated
assault beyond a reasonable doubt.

          In
reviewing a legal insufficiency claim, we view the evidence in the light most
favorable to the verdict and decide whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Wilson v. State, 7 S.W.3d 136, 141 (Tex.
Crim. App. 1999).  We do not engage in a
second evaluation of the weight and credibility of the evidence, but only
ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).

          A
person commits assault when he “intentionally, knowingly, or recklessly causes
bodily injury to another.”  Tex. Pen. Code Ann. § 22.01(a)(1)
(Vernon 2003).  The assault is aggravated
when the person “(1) causes serious bodily injury to another . . . ; or (2)
uses or exhibits a deadly weapon during the commission of the assault.”  Id.
§ 22.02(a)(1)–(2).

Castro focuses his argument on the
serious bodily injury requirement of section 22.02(a)(1).  The indictment, however, alleges that Castro
“intentionally and knowingly cause[d] bodily injury to DARSHA LARA, by using a
deadly weapon, namely, a rope.”  Thus,
the State’s theory is that Castro committed aggravated assault under section
22.02(a)(2) by using a deadly weapon—not by causing serious bodily injury as
set forth in section 22.02(a)(1).  “When
an indictment facially alleges a complete offense, the State is bound by the
theory alleged in the indictment, as is the reviewing court in its sufficiency
analysis.”  Rojas v. State, 986
S.W.2d 241, 246 (Tex. Crim. App. 1998). 
Accordingly, we are confined to reviewing whether there is legally
sufficient evidence that Castro, with the requisite mental state, used a deadly
weapon[1] in
causing bodily injury to Darsha.

“Bodily injury” means “physical pain,
illness, or any impairment of physical condition.”  Tex.
Pen. Code Ann. § 1.07(a)(8) (Vernon 2003).  “This definition appears to be purposefully
broad and seems to encompass even relatively minor physical contacts so long as
they constitute more than mere offensive touching.”  Lane v. State, 763 S.W.2d 785, 786
(Tex. Crim. App. 1989).  Testimony from
the victim that she suffered physical pain is generally sufficient to prove
bodily injury.  Allen v. State,
533 S.W.2d 352, 354 (Tex. Crim. App. 1976); Letson v. State, 805 S.W.2d
801, 806–07 (Tex. App.—Houston [14th Dist.] 1990, no pet.).  Moreover, “[t]he existence of a cut, bruise,
or scrape on the body is sufficient evidence” to give rise to an inference that
the victim felt physical pain and thus suffered “bodily injury” within the
meaning of the statute.  Arzaga v.
State, 86 S.W.3d 767, 778–79 (Tex. App.—El Paso 2002, no pet.); see also
Goodin v. State, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet.
ref’d) (“The fact of a physical intrusion on the body in the form of a cut or
scrape can itself be sufficient evidence of the associated physical pain
necessary to show ‘bodily injury.’”).

Here, Darsha testified that she had
scratches on her back and “all over” her arms, a rope burn on her neck, and a
“busted mouth.”  She also testified that
these injuries were painful and took approximately one week to heal.  Officer Gonzales and John corroborated her
testimony.  Specifically, Officer
Gonzales testified that Darsha had scratches on her neck and arms, a “busted
lip,” and blood coming from her mouth; John testified that Darsha had rope
burns on both sides of her neck, scratches on the back of her neck, and a
“busted lip.”  We hold that this evidence
is sufficient to show bodily injury.  See
Allen, 533 S.W.2d at 354 (holding evidence was sufficient to show bodily
injury where appellant kicked police officer in nose and officer testified his
nose hurt, swelled, and was sore for three or four days); Harris v. State,
164 S.W.3d 775, 784–85 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (where
appellant attempted to choke victim, holding evidence was sufficient to show
bodily injury because victim had “reddish marks around [her] neck” and scratch
on her collarbone); Arzaga, 86 S.W.3d at 778–79 (where appellant punched
victim in mouth, holding State proved bodily injury by legally sufficient
evidence because victim had at least one abrasion on inside of upper lip and
her mouth was swollen and bruised); Hubert v. State, 652 S.W.2d 585, 588
(Tex. App.—Houston [1st Dist.] 1983, pet. ref’d) (holding victim’s testimony
that appellant struck his face and scratched his neck, which caused swelling
and tenderness, was sufficient to prove bodily injury).

When viewed in the light most
favorable to the verdict, we conclude that the evidence supports a
determination beyond a reasonable doubt that Castro intentionally and knowingly
caused bodily injury to Darsha.  We
therefore hold that the evidence is legally sufficient to support Castro’s
conviction for aggravated assault.

Factual Sufficiency

          Castro
contends the evidence is factually insufficient to support his conviction for
aggravated assault because Darsha’s testimony was uncorroborated and
inconsistent, and was impeached by the fact that she has two prior felony
convictions.  He further asserts that his
version of the events is more believable than Darsha’s version.

          In
a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the
verdict is clearly wrong and manifestly unjust, or the contrary evidence is so
strong that the standard of proof beyond a reasonable doubt could not have been
met.  Zuniga v. State, 144 S.W.3d
477, 483 (Tex. Crim. App. 2004). 
Although our analysis considers all the evidence presented at trial, the
trier of fact is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given to their testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  We may not
substitute our own judgment for that of the fact-finder.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000).

          Castro
first asserts that Darsha’s “rendition of events is completely uncorroborated
by any credible or physical evidence.”  To
the contrary, Darsha testified that while she was walking her dog near the
carwash, Castro approached her from behind and tightly pulled a piece of rope
around her neck.  During the struggle,
Castro scratched her arms and back, “busted” her mouth, and caused a rope burn
on her neck.  Darsha’s testimony was
corroborated by Officer Gonzales, Officer Cruz, and John.  Specifically, all three men testified that
when they saw Darsha after the attack, she had a piece of rope around her
neck.  Moreover, Officer Gonzales and
Officer Cruz testified that Castro had an identical piece of rope in his hand
and another piece of rope dangling from his pocket.  Both Officer Gonzales and John testified that
Darsha was extremely “shaken up,” was crying “hysterically,” and had scratches
and rope burns on her neck, along with a “busted lip.”  John testified that when he encountered
Castro, Castro grew belligerent and began cursing Darsha; Officer Gonzales and
Officer Cruz testified that Castro resisted arrest, was “very irate,” and
continually screamed profanities directed at Darsha.  The State introduced into evidence, and
Officer Gonzales authenticated, the piece of rope recovered from Darsha’s neck,
as well as the identical piece of rope Castro had in his pocket.  Thus, Darsha’s testimony was corroborated by
both physical evidence and the observations of three witnesses.

          Castro
also contends Darsha’s credibility was impeached by the fact that she has two
prior felony convictions.  He observes
that there were several inconsistencies in her testimony and urges that his
version of the events is more believable than Darsha’s version.  It is within the exclusive province of the
jury, however, to resolve any conflicts and inconsistencies in the
evidence.  Heiselbetz v. State,
906 S.W.2d 500, 504 (Tex. Crim. App. 1995); Harris, 164 S.W.3d at 784.  The jury is free to believe or disbelieve
part or all of a witness’s testimony.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986); Harris, 164
S.W.3d at 784; see also Hall v. State, 137 S.W.3d 847, 852–53 (Tex.
App.—Houston [1st Dist.] 2004, pet. ref’d) (refusing to disturb jury’s
credibility assessment where jury heard appellant’s claims “but declined to
believe” him).  Here, the jury chose to
believe Darsha’s version of the events, which, as we have already discussed,
was corroborated by both physical evidence and the testimony of Officer
Gonzales, Officer Cruz, and John.  “A
decision is not manifestly unjust merely because the jury resolved conflicting
views of the evidence in favor of the State.” 
Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).

          Viewing
all the evidence in a neutral light, we conclude that the evidence supporting
Castro’s guilt is not so weak or so against the overwhelming weight of the
contrary evidence as to render the jury’s verdict clearly wrong and manifestly
unjust.  We therefore hold that the
evidence is factually sufficient to support Castro’s conviction for aggravated
assault.

 

 

 

 

 

 

Conclusion

          We
conclude that the evidence is legally and factually sufficient to support
Castro’s conviction and therefore affirm the judgment of the trial court.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).











[1] In the portion of his brief entitled “Issues
Presented,” Castro asserts that there is legally insufficient evidence that he
used or exhibited a deadly weapon during the assault.  Castro, however, did not argue this point or
provide citations to relevant authorities in accordance with Texas Rule of
Appellate Procedure 38.1(h)—indeed, the remainder of his brief does not even
mention the deadly weapon issue.  In any
event, we note that a rope can constitute a deadly weapon.  Harper v. State, 753 S.W.2d 516, 518
(Tex. App.—Houston [1st Dist.] 1988, pet. ref’d).