# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00723-CR

**Charles Anthony Malouff, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-13-904021, HONORABLE KAREN SAGE, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Charles Anthony Malouff, Jr., guilty of the first degree felony of securing by deception the execution of a document affecting property valued in excess of $200,000. *See* Tex. Penal Code § 32.46(a), (b)(7). After electing to have the trial court assess punishment, Malouff received 15 years' confinement in the Texas Department of Criminal Justice-Institutional Division. Malouff filed a motion for new trial, which the court denied. On appeal, Malouff raises four issues, asserting that (1) he was selectively prosecuted, (2) the trial court erred by failing to suppress testimony regarding evidence that was improperly destroyed, (3) the trial court erred by not granting him a continuance to review evidence that was untimely disclosed by the State, and (4) the indictment was vague and failed to inform him of the allegations against him. We will affirm.

# BACKGROUND

After retiring from a career in law enforcement, Malouff founded green energy businesses CM Alternative Energies and CM Energy International.[1] Malouff, then a resident of the City of Jonestown and aware that there was federal grant funding available to local governments through the Distributed Renewable Energy Technology Program, encouraged the City of Jonestown to apply for a grant to fund several wind turbines in and around Jonestown that his company would install. The grant application process was managed by the Texas Comptroller's office. Malouff drafted the grant application for the City of Jonestown. The grant was awarded to the City of Jonestown, and a grant agreement was executed by the Comptroller's office in November 2010.

During the time the Comptroller's office was reviewing the grant application, Mary Jo Woodall, an acquaintance of Malouff's, was working there as a grant coordinator handling green energy and other types of federal stimulus grants. There was testimony at trial that Woodall helped Malouff draft the grant proposal. The State presented evidence at trial that Woodall was involved in Malouff's business ventures and the two had a previous and ongoing intimate relationship. The State contended that this created a conflict of interest and that the conflict was never disclosed to the appropriate authorities at the Comptroller's office. The grant proposal submitted by the City included the following representations:

> CM Alternative Energies, Inc., has determined there are no existing or potential conflicts of interest or possible issues that might create appearances of impropriety relative to the City's and our future subcontractor's submission of this application, possible selection as subcontractor, or our performance toward completion of a project.

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

2

CM Alternative Energies, Inc., has not had past or present contractual business, financial, or personal relationships with the comptroller.

The State elicited evidence at trial tending to show that this representation was false, and there was also testimony that the grant application contained false representations regarding the state of Malouff's companies' wind turbine technology. For example, there was testimony that the companies' turbine technology had not advanced to the level that would have permitted the turbines to generate the electrical output represented in the grant application. There was also testimony at trial that the representation in the grant application that the electric capability of Malouff's companies had been verified by a licensed master electrician with over 24 years' experience was false. Finally, although the grant application funds were not to be used for research and development, but to fund already viable wind energy projects, there was testimony at trial that Malouff's employees were "researching and developing the whole time." Several individuals from the Comptroller's office testified that they would not have executed the grant agreement had they known the true facts regarding the technological capabilities of Malouff's companies or that he had a prior and ongoing personal relationship with Woodall.

In 2013, a grand jury indicted Malouff for the offense of securing the execution of a document by fraud. Specifically, the indictment alleged that Malouff, with intent to defraud or harm the United States Department of Energy and the Texas Comptroller, caused a representative of the Comptroller's office to execute the grant agreement to install wind turbines in and around the City of Jonestown by (1) creating a false impression in the City of Jonestown's grant application concerning the qualifications and capabilities of CM Alternative Energies, Inc. and its wind turbine technology that was likely to affect the judgment of representatives of the Comptroller's office, and

3

(2) preventing representatives of the Comptroller's office from learning that the grant application contained false and misleading information about CM Alternative Energies, Inc. and its wind turbines and from learning that Malouff had an ongoing personal and business relationship with the grant coordinator assigned to the grant.[2]  Malouff filed a motion to quash the indictment on the grounds that it was the result of unconstitutional selective prosecution and was unconstitutionally vague.  The trial court denied the motion to quash on vagueness grounds but stated that it would not rule on the motion to quash based on selective prosecution until after trial.  The court stated that, in the event Malouff was convicted, he could raise that issue in a motion for new trial.

After the jury convicted Malouff of the charged offense, Malouff filed a motion for new trial.  In the motion, Malouff stated that he was entitled to a new trial because:

A. Defense counsel objected to the selective prosecution in this case.  Defendant's name was not on the document which is the subject matter of this prosecution.  The individuals who did sign said document were never charged.  The trial judge did not rule on the objection,  Appellate counsel is requesting that this Court reopen the hearing on this issue or rule on said motion.

B. Defense counsel filed a motion to suppress the search of Defendant's residence and properties as well as the search of Mary Jo Woodall['s] residence and property.  Woodall had a hearing dealing with this issue.  That hearing was held in this Court and this Court had access to that information when it ruled on Defendant's motion.  Defense would request that this Court incorporate the hearing in the Woodall suppression hearing into the record of this cause.

C. The verdict is contrary to the law and the evidence.

The trial court denied the motion for new trial.  Malouff then perfected this appeal.

---

[2]  The indictment also included a count of misapplication of fiduciary property, which the State abandoned before trial.

4

*Selective Prosecution*

The trial court deferred ruling on the motion to quash and, after trial, Malouff moved for a new trial based on his selective-prosecution claim. The trial court denied the motion at a hearing on the motion for new trial. In his first issue, Malouff asserts that the trial court erred in failing to grant his motion to quash the indictment on the basis of selective prosecution. Selective prosecution is not a defense on the merits to a criminal charge but is an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996). Because this issue has no bearing on the determination of actual guilt, it is an issue for the trial court to decide. *See Galvan v. State*, 988 S.W.2d 291, 295 (Tex. App.—Texarkana 1999, pet. ref'd).

To support a defense of selective or discriminatory prosecution, a defendant must make a prima facie showing that (1) although others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) the government's discriminatory selection of him has been invidious or in bad faith, i.e., based on impermissible considerations such as race, religion, or the desire to interfere with his constitutional rights. *See Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980). The presumption is always that a prosecution for violation of criminal law is undertaken in good faith and in a nondiscriminatory fashion to fulfill a duty to bring violators to justice. *See Hall v. State*, 137 S.W.3d 847, 855 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). An appellant must come forward with "exceptionally clear evidence" that the prosecution was initiated for an improper reason. *Nelloms v. State*, 63 S.W.3d 887, 893 (Tex. App.—Fort Worth

2001, pet. ref'd). "Mere 'conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Ojala*, 544 F.2d 940, 943 (8th Cir. 1976) (cited with approval in *Gawlik*, 608 S.W.2d at 673).

As support for his claim to have been singled out for prosecution, Malouff asserted that the government had elected not to prosecute other individuals or companies who received federal and state grant money yet failed to accomplish the goals set forth in their grant applications. Malouff was not, however, indicted for failing to successfully complete the proposed wind energy project but rather for allegedly misrepresenting his company's technological capabilities in order to secure the grant. He was also indicted for allegedly preventing the Comptroller's office from learning that he had a very close personal relationship with Woodall, the grant coordinator assigned to the grant. The State did bring charges against Woodall. Nevertheless, Malouff points to the fact that other individuals involved in the Jonestown wind project, including those who signed the grant application, were not prosecuted. The evidence at trial, however, was that it was Malouff who wrote the grant application containing the misrepresentations that formed the basis of the State's case against him. Malouff does not identify in his brief any evidence elicited at trial that any of the other individuals involved in applying for the grant were aware that any representations made in the grant application were untrue or misleading. Malouff has not made a prima facie showing that he was singled out for prosecution despite the fact that others similarly situated to him were not also prosecuted.

Malouff also failed to make a prima facie showing that the allegedly discriminatory prosecution of him was invidious or in bad faith. While Malouff maintains that he was prosecuted

6

because of his vocal criticism of the government and law enforcement in general, the evidence he relies on does not constitute "exceptionally clear evidence" that the prosecution was initiated to interfere with any of his constitutional rights. *See Gawlik*, 608 S.W.2d at 673. The evidence Malouff relies on is: (1) testimony from the master electrician hired to assist with the project that Malouff "never cared for the federal government" and "did not care for cops," and that he had expressed animosity toward them, and (2) testimony from another individual involved in the wind energy project that Malouff was "not fond of the federal government" and had informed another employee that he "hate[d] cops." However, Malouff has failed to identify any evidence that any prosecutors involved in the decision to seek an indictment against Malouff were aware of his negative feelings about law enforcement or the federal government at the time the decision was made to prosecute him. Without such evidence, no causal connection can be made between Malouff's speech regarding his feelings about law enforcement and the government and his prosecution. *See Saveika v. State*, No. 03-11-00070-CR, 2012 WL 2077679, at *7 (Tex. App.—Austin June 8, 2012, no pet.) (mem. op., not designated for publication). Malouff has not overcome the strong presumption of good-faith, nondiscriminatory prosecution and has failed to establish a prima facie showing of discriminatory intent in the State's prosecution of him. We overrule the first issue.

### Denial of Motion to Suppress

In his second issue, Malouff contends that the trial court erred by refusing to suppress any evidence "regarding the capacities and capabilities of the vertical wind turbine constructed for the City of Jonestown wind energy project." Malouff moved to suppress such evidence on the ground that the State violated his due process rights under the United States Constitution by failing

to preserve the wind turbines. According to Malouff, the State essentially destroyed the wind turbines by allowing their electrical components to be exposed to the elements, causing corrosion and oxidation. Malouff maintains that the State "crudely dismantled and improperly stored" the wind turbines such that their components and capabilities could not be identified. Malouff argues that, had they been preserved, the wind turbines could have been tested, and such testing would have revealed that the wind turbines were functioning and capable of performing as represented in the grant application. The trial court did not grant Malouff's motion to suppress and, according to Malouff, permitted the State to elicit irrebuttable testimony about the capabilities of the turbines from many witnesses.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). An abuse of discretion occurs when the trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). The trial court's application of the law to the relevant facts is reviewed de novo. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial court's ruling must be upheld if it is correct under any theory of law applicable to the case. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

A federal due process violation occurs whenever a state suppresses or fails to disclose material, exculpatory evidence, regardless of whether the state acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004). In addressing whether a pre-trial destruction of evidence constitutes a denial of due process of law under the United States Constitution, the Supreme Court has drawn a distinction between "material, exculpatory evidence" and "potentially useful evidence." *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The Supreme Court has held that, if a defendant

8

seeks to prove a federal due-process violation based on a state's destruction of potentially useful evidence, as opposed to material, exculpatory evidence, the defendant must show the state acted in bad faith in destroying the evidence. *Id.* "Potentially useful" evidence is evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the appellant." *Id.* at 57-58.

While Malouff appears to contend that the turbines constituted material, exculpatory evidence, there is no evidence in the record to support such a claim. Malouff's attorney was informed that the State intended to dismantle the turbines and did nothing to prevent their destruction, indicating his belief that the turbines would not be beneficial to Malouff's defense, much less material, exculpatory evidence. Malouff asserts in his brief that witness testimony that the turbines did not have the capabilities represented in the grant application "could only have been rebutted by testing." Thus, Malouff essentially concedes that the turbines were "potentially useful" as opposed to "material and exculpatory" under the Supreme Court's definition. Consequently, to prove a federal due-process violation, Malouff was required to demonstrate that the State acted in bad faith in dismantling and storing the turbines in a manner that destroyed their evidentiary value.

In his motion to suppress, Malouff stated that he "will show that the State destroyed the evidence in bad faith." Malouff fails, however, to apprise this Court of what evidence he adduced at trial tending to show the State's bad faith. On appeal, Malouff asserts that bad faith is demonstrated by the State's failure to preserve the turbines even though it knew that its own expert thought testing the turbines was necessary to determine what their true capabilities were. However, as Malouff points out, the State informed his counsel that it intended to destroy the turbines and provided him an opportunity to preserve them for testing. The lead prosecutor stated to the trial court:

9

The Defense had 20 days' notice after they were notified of the City's intention. If they wanted to preserve the turbines for testing, they could have done so. My impression from communicating with [counsel for Malouff] was that that was not the Defense's angle at that time and they did not want any evidence that would further show that the devices did not work. Furthermore—so I don't think that they wanted the turbines preserved. I believe that was a decision made by the Defense at the time, and now we have a different attorney in charge and a different decision was made, but certainly there was no bad faith on the part of the State. We notified the Defense immediately.

Moreover, several witnesses who worked on the project for CM Alternative Energies, including the project manager, a master electrician, and the company's president, testified that the turbines were incapable of generating the electrical output represented in the grant application. Finally, the lead investigator testified that, in the State's view, the turbines' actual capabilities and capacities were irrelevant to the case because the turbines had not even been built at the time Malouff made the false representations in the grant application regarding their capabilities. The evidence supports the trial court's finding that the State did not destroy the turbines in bad faith and, consequently, denial of the motion to suppress was not an abuse of discretion. *See id.* We overrule Malouff's second issue.

### Denial of Motion for Continuance

In his third issue, Malouff asserts that the trial court erred by denying a motion for continuance he requested in order to review spreadsheets prepared by the State's financial analyst, Robin Timmons. Timmons had reviewed bank records for Malouff's companies and prepared a spreadsheet tracking the disposition of grant funds received from the State. Timmons's spreadsheets were not produced to Malouff before trial. The State stipulated at trial that the spreadsheets revealed

10

that all but $100,000 of the grant money was used for company expenditures. During Timmons's testimony at trial, she referred to the spreadsheets to refresh her memory. Counsel for Malouff requested a bench conference during which he argued that the spreadsheets constituted *Brady* material that had not been provided to the defense. According to Malouff's counsel, the spreadsheets were exculpatory evidence because they showed that Malouff had not taken the grant money himself but had spent the majority of it on legitimate company business. The State countered that the material was work product and was not exculpatory because Malouff had been indicted for making misrepresentations in a grant application, not for theft. While disputing that the spreadsheets were *Brady* material, the State agreed to provide the eight-page spreadsheet to Malouff.[3]

The next morning, counsel for Malouff made an oral motion for continuance and requested funds to retain an expert to assist in reviewing the spreadsheets. The court granted the motion for continuance and approved the request for funds for an expert. The court stated its intention to proceed with trial four days later, on the following Monday. On Monday, counsel for Malouff requested an additional one-week continuance to review the spreadsheets. The court denied the request for a one-week continuance but agreed to recess the trial until Wednesday. The next day, the court held a pre-trial hearing related to the State's case against Woodall. Counsel for the State and for Malouff were present at that hearing. Later that morning, the court held a

---

[3] The State has brought a cross-point on appeal challenging the trial court's determination that the spreadsheets constituted *Brady* material. Because we overrule each of Malouff's four appellate issues, the State's cross-point is not dispositive of this appeal and we will not address it. *See* Tex. R. App. P. 47.1 (court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal). The State agrees that we need only address its cross-point if we sustain any of Malouff's issues.

11

hearing in Malouff's case and recessed Malouff's trial for six days until the following Monday. The court stated:

> Earlier the Defense had asked for a continuance and I had denied it, but now, in addition to that, the Court has some personal family matters that I must attend to, and so I am going to continue both on the Defense motion and on the Court's own motion, I guess, because it is unavoidable at this point, continue this case until Monday at 9:00 a.m. where we will bring in the jury again.

When the parties returned to court after the six-day continuance, counsel for Malouff informed the court that the State had informed her the day before that the additional financial data provided as backup data supporting the eight-page spreadsheet contained some inaccuracies. According to Malouff's counsel, the additional financial data was "riddled with errors." The State maintained that the data contained four easily corrected "categorizing errors." Malouff's counsel moved for an additional one-week continuance. The State suggested a longer lunch break to permit Malouff's counsel to confer with her expert. The court agreed to the State's suggestion and trial resumed. On appeal, Malouff contends that the trial court erred by denying this motion for continuance.

Texas Code of Criminal Procedure article 29.03 provides that "a criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown . . . ." Tex. Code Crim. Proc. arts. 29.03, 29.08. The Texas Court of Criminal Appeals has interpreted this article to mean that "if a party makes an unsworn oral motion for continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (quoting *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009)). The record in this case contains no written motion

for continuance. "Ultimately, an unsworn oral motion preserves nothing for appeal." *Id.* When an issue has not been properly preserved for appeal, the court of appeals should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Malouff's third issue, which was not properly preserved for appellate review, is overruled.[4]

***Sufficiency of the Indictment***

In his fourth issue, Malouff argues that the trial court erred by denying his motion to quash the indictment on the ground that it was vague and failed to adequately inform him of the allegations against him. The sufficiency of an indictment is a question of law. *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). We review de novo the trial court's ruling on a motion to quash an indictment on the ground that it is insufficient. *Id.* at 14.

The indictment alleges that Malouff, with the intent to defraud or harm a person, caused one or more representatives of the Comptroller's office to execute the Comptroller of Public Accounts Grant Agreement for the Distributed Renewable Energy Technology Program, contract number CS0951, by:

> (1) creating the false impressions of fact in the City of Jonestown's grant application and its attachments concerning the qualifications and capabilities of Charlie Malouff's company, CM Energies, AKA CM Alternative Energies, Inc. (hereinafter CME), and

---

[4] We do observe, however, that on this record it does not appear that the trial court abused its discretion in concluding that Malouff failed to demonstrate sufficient cause for continuing the trial to give him additional time to review the spreadsheets beyond the ten days he already had. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) ("We review a trial court's ruling on a motion for continuance for abuse of discretion."); *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. App.—Houston [14th Dist.] 2010, pet. struck) ("To establish an abuse of discretion, a defendant must show she was actually prejudiced by the denial of her motion.").

its wind turbine technology likely to affect the judgment of representatives of the Comptroller's Office in the grant agreement transaction, and that Charlie Malouff did not believe to be true; and

(2) preventing representatives of the Comptroller's Office from acquiring information likely to affect their judgment in the transaction, specifically, the fact that the Jonestown grant application and its attachments contained false and misleading information about CME and its wind turbines and the fact that Malouff had a prior and ongoing personal and business relationship with the grant coordinator assigned to this grant.

The indictment further alleged that the grant agreement affected the pecuniary interest of the United States and the State of Texas, and the value of that pecuniary interest was more than $200,000.

The indictment tracks the language of Texas Penal Code section 32.46. *See* Tex. Penal Code § 32.46. This statute provides that a person commits the offense of Securing Execution of a Document by Deception if "with intent to defraud or harm any person, he, by deception . . . causes another to sign or execute any document affecting property or service or the pecuniary interest of any person." *Id.* § 32.46(a)(1). Subject to rare exceptions, an indictment tracking the language of a statute will satisfy constitutional and statutory requirements. *Smith*, 309 S.W.3d at 14 (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)).

To support his argument that, despite tracking the language of the statute, the indictment is unconstitutionally vague, Malouff relies on *Haecker v. State*, 571 S.W.2d 920, 921 (Tex. Crim. App. 1978). In *Haecker*, the Texas Court of Criminal Appeals held that if "the language of the statute is not completely descriptive, then merely tracking the statutory language would be insufficient." *Id.* Malouff maintains that section 32.46 fits the category of statutes that are not sufficiently descriptive such that tracking its language adequately notifies the defendant of the

14

charges against him to permit him to prepare his defense. We disagree. The statute completely describes the offense of Securing the Execution of a Document by Deception. *See* Tex. Penal Code § 32.46. The statute also incorporates the Texas Penal Code's definition of "deception" and the indictment tracks the language of that statutory provision in describing the deception the State alleged that Malouff engaged in to secure execution of the grant agreement. *See id.* § 31.01 ("deception" includes "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction" and "preventing another from acquiring information likely to affect his judgment in the transaction"). Although Malouff contends the indictment is vague, it identifies the specific document at issue and the date on which it was executed.

The indictment carefully tracked the language of the relevant statute and its definition. It also provided additional information about the alleged offense. We conclude that the indictment sufficiently alleged the offense of securing execution of a document by deception, provided adequate notice to Malouff, and comported with constitutional and statutory requirements. Malouff's fourth issue is overruled.

## CONCLUSION

Having overruled each of Malouff's four appellate issues, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   October 7, 2015

Do Not Publish