In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00201-CR**
_____

**BOBBY CURTIS SCYRUS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-12-17125-CR**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Bobby Curtis Scyrus ("Appellant" or "Scyrus") for cruelty to a non-livestock animal, a third-degree felony, for "intentionally, knowingly or recklessly tortur[ing] an animal [] by striking the animal repeatedly with the defendant's hands and with an object[.]"[1] *See* Tex. Penal Code

---

[1] The grand jury also indicted Scyrus for an offense against his girlfriend, "Paige," stemming from the same incident: aggravated assault family violence with a deadly weapon, in trial cause number 22-12-17126-CR. A jury convicted him of the offense as charged in the indictment and Scyrus filed a Notice of Appeal in that

Ann. § 42.092(b)(1), (c-1). Scyrus pleaded "not guilty," but a jury found him guilty as charged in the indictment. After a hearing on punishment, the jury assessed punishment at five years of confinement. In a single issue on appeal, Scyrus argues that the evidence is insufficient to support his conviction. As explained below, we overrule his issue and affirm the judgment of conviction as reformed.

Evidence at Trial

Recorded 911 Call

The State offered a recording of a 911 call from December 17, 2022, into evidence along with a Call Detail Report, and the exhibits were published to the jury. The caller identified herself as Paige[2], and she told the dispatcher that she was hiding at her neighbor's house, that her boyfriend, Bobby Scyrus, had beaten her up and killed her dog, and her dog was dead in her bathroom. Paige also told the dispatcher that Scyrus "threatened to kill [her] with a chopped knife."

---

case, however his court-appointed defense attorney filed an *Anders* brief in the appeal from trial cause number 22-12-17126-CR, which we previously addressed in a separate opinion. *See Scyrus v. State*, No. 09-24-00202-CR, 2025 Tex. App. LEXIS 5271 (Tex. App.—Beaumont July 23, 2025, no pet. h.) (mem. op., not designated for publication). We discuss limited evidence related to the assault charge only as necessary for a resolution of the appeal of the animal cruelty case.

[2] We use pseudonyms to identify the victim. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

Testimony of Investigator Francisco Saavedra

Francisco Saavedra testified that he is an investigator with the Montgomery County District Attorney's Office and he previously worked as an investigator in Harris County. Saavedra agreed that he assisted in the case against Scyrus, and he met with Paige, who made the 911 call. According to Saavedra, Paige was "agreeable[]" and forthcoming, but anxious when he met with her. Saavedra testified that, when Paige talked about Scyrus, she appeared "terrified[.]" Saavedra also testified that Paige's statements to Saavedra were consistent with Paige's statements to law enforcement at the time the incident occurred.

On cross-examination, Saavedra agreed that there was some clutter in Paige's trailer home. Saavedra also testified that he saw Paige's dog, Champ, when Saavedra was at the home, and Champ came out to greet him and was wagging his tail.

Testimony of Detective Troy Moseley

Troy Moseley, a detective with the Montgomery County Sheriff's Office, testified that he was working on December 17, 2022. Moseley recalled that he responded to a domestic violence call at Paige's address at about 9 a.m. Moseley recalled that the call came in as family violence in progress, with Paige calling from a neighbor's house, and the call indicated the dog was "injured or dead." Moseley identified State's Exhibit 2 as a recording of the 911 call for the incident, and State's Exhibit 3 as the call log notes and call detail reports, and both exhibits were admitted

3

and published to the jury. Moseley testified that the call notes reflect that Paige was the "911 caller" and the caller reported family violence. He further testified that the caller reported that her boyfriend, Bobby Scyrus "killed her dog and beat her up [and] the dog [was] in the bathroom dead[,]" and Moseley took that to mean that Paige thought the dog was deceased at the time she called 911. Moseley also testified that the call notes reflect that Paige told 911 dispatch that Scyrus had threatened to hurt her with "a chopped knife."

Moseley testified that upon arrival at Paige's home, Scyrus was at Paige's home, Paige was with her neighbor, Paige was "distraught[,]" and "she was more worried about her dog than about her own physical pain[.]" According to Moseley, after Scyrus was brought outside and detained, Paige showed the officers around inside the trailer home. Moseley identified State's Exhibit 34 as a still photo of Paige pointing to a knife on the counter of her home, and the photo was taken from his body camera. Moseley testified as follows:

> [Paige] explained that her boyfriend was over the night before and that he had killed her dog and made her clean up the mess and she tried to stop him from harming the dog and he ended up hitting her in the head, hitting her in the back and, I believe, restraining her feet at one point to keep her from kicking him.

Moseley also testified that he learned from Paige that Scyrus used various objects to hit the dog, including possibly a stool.

4

Moseley identified State's Exhibits 4 through 17 as photos taken at the scene on the day of the incident, which were admitted into evidence. Moseley testified that State's Exhibits 5 and 6 depict a glass object and a stain that appears to be consistent with blood, and the officers suspected that the blood came from the dog. Moseley testified that Exhibit 7 shows a knife and Exhibit 8 depicts a crowbar. Moseley recalled that Paige had told other deputies that Scyrus used the crowbar on her dog. Moseley also identified Exhibit 9 as a photo of the bathroom with a stain on the rug next to the toilet, and Moseley testified that the stain was blood from Champ, "her dog that was in there." Moseley testified that Exhibit 10 shows what "[l]ooks like blood smeared on the wall." Describing Exhibit 11, Moseley testified that it "[l]ooks like something had hit the wall hard and caused it to get damaged," which suggested a struggle had occurred. Moseley also identified what looked like blood on a board in Exhibits 12 through 15, and he testified that he had reason to believe that a board was used to hit the dog. Moseley identified a knife in Exhibit 16 that he collected at the scene, and a crowbar in Exhibit 17.

Moseley agreed that Exhibits 18 through 21 are photographs of Champ, Paige's dog, taken by the deputies who responded to the call, including photos of the dog's injuries. Moseley recalled that Champ had an injury to his front left paw, Champ was favoring that paw and limping when Champ came out of the trailer, and Champ was "actively bleeding" and shaking as though in pain, although according

5

to Moseley, Champ appeared friendly and not aggressive. Moseley testified that State's Exhibit 19 shows "[b]lood splattered across [the dog's] fur." Moseley described Exhibit 21 as showing Champ with "an injured paw bleeding." Moseley agreed that the injuries he observed on Champ were consistent with a dog that had been hit with several objects that were in the home.

Moseley also testified about various injuries he observed on Paige. Moseley testified that Paige gave the deputies consent to search the trailer, and after concluding the investigation, he arrested Bobby Scyrus for assault/family violence and animal cruelty for injuries to the dog.

Testimony of Deputy Alexander Harmer

Alexander Harmer, a patrol deputy with the Montgomery County Sheriff's Office, testified that he responded to the call at Paige's residence on December 17, 2022. According to Harmer, he learned from Paige that Scyrus had gotten upset that Champ was on the bed, Scyrus grabbed Champ by the collar, Scyrus struck Paige, and then he grabbed a knife and told Paige that "she would not make it to the morning." Harmer testified that Paige had injuries to her face. After speaking with Paige at a neighbor's home, the officers went to Paige's trailer to speak with Scyrus, and when Scyrus opened the door, "[t]he dog ran out in a hurry[.]" According to Harmer, there was clutter throughout the home and "bloodstains on the floor and on surrounding objects."

6

Harmer recalled that Paige told 911 that her dog was "dead in the bathroom." Harmer testified that Champ ran out of the front door of Paige's trailer and was "visibly limping, and there was blood on the front, left paw and the rest of the body[,]" and the dog "[a]ppeared to be scared and tried to run away from whatever was inside the [home]." Harmer testified that, based on his training and experience, the amount of blood on the dog did not indicate an accident and was more likely to be from recent injuries from "[e]ither the crowbar or the wood found inside the home." According to Harmer, Paige told the officers that the crowbar on the table in her home was used to try to harm Champ, and based on the injuries observed, Harmer found Paige credible on this point. Harmer recalled that Paige also told the officers that Scyrus used a board to harm the dog. Harmer testified that, based on his investigation, he concluded that Scyrus had committed family violence against Paige and animal cruelty against Champ. On cross-examination, Harmer testified that he did not recall seeing a collar on Champ, nor did he see any visible marks on Scyrus that indicated he used his bare hands in struggling with the dog. Harmer also testified that the dog was not dead even though Paige had stated she thought the dog was dead. Harmer did not recall seeing blood on the crowbar.

The jury found Scyrus guilty of cruelty to a non-livestock animal as alleged in the indictment. After a hearing on punishment, the jury assessed punishment at five years of imprisonment. Scyrus timely filed a Notice of Appeal.

## Issue

On appeal, Scyrus argues that the evidence was insufficient to support his conviction. He contends his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and the Texas Constitution were violated because the evidence at trial was insufficient to establish beyond a reasonable doubt that he "tortured" Champ. According to the Appellant, there was a lack of direct evidence linking him to Champ's injuries and a lack of circumstantial evidence warranting a conviction. Appellant also argues that the State relied on "conflicting statements" that Paige made to law enforcement. Appellant further argues that the State failed to enter any forensic fingerprint or blood evidence to prove that he injured Champ.

## Standard of Review

In reviewing the legal sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319.

As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13 (citing *Jackson*, 443 U.S. at 326); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. "[I]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim.

App. 1993); *see also Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Guevara v. State*, 667 S.W.3d 422, 434 (Tex. App.—Beaumont 2023, pet. ref'd).

To obtain a conviction for the third-degree felony offense of cruelty to a non-livestock animal, the State had to prove beyond a reasonable doubt that Scyrus intentionally, knowingly, or recklessly tortured an animal or in a cruel manner killed or caused serious bodily injury to an animal and without the owner's effective consent. *See* Tex. Penal Code Ann. § 42.092(b)(1); *Prichard v. State*, 533 S.W.3d 315, 324 (Tex. Crim. App. 2017). "Torture" includes any act that causes unjustifiable pain or suffering. Tex. Penal Code Ann. § 42.092(a)(8). In a "cruel manner" includes a manner that causes or permits unjustified or unwarranted pain or suffering. *Id.* § 42.092(a)(3). A person's culpable mental state may be inferred from his acts, words, and conduct, and from the surrounding circumstances. *See Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018).

Analysis

In this case, the jury heard the recorded 911 call in which Paige is heard telling the dispatcher that Scyrus beat her up and killed her dog, and that her dog was dead in her bathroom. The Call Detail Report that was entered into evidence includes the notations, "he killed her dog and beat her up" and "the dog is in the bathroom dead[.]" Detective Moseley testified that he and the other officers at the scene

observed blood stains in the house that they suspected were from the dog's injuries. Moseley also testified that he saw blood on a board, and he had reason to believe that the board was used to hit the dog. Moseley testified that Champ had an injury to his front left paw, and the dog was "actively bleeding[,]" limping, and shaking. Deputy Harmer testified that he learned from Paige that Scyrus had gotten upset because Champ was on the bed, and then Scyrus became aggressive with the dog and with Paige. Harmer testified that Champ ran out of the front door of Paige's trailer when Scyrus opened the door to the officers, that Champ was "visibly limping, and there was blood on the front, left paw and the rest of the body[,]" and that the dog was visibly shaking and "[a]ppeared to be scared and tried to run away from whatever was inside the [home]." Harmer also testified that, based on the amount of blood on Champ, it appeared the dog's injuries were from "[e]ither the crowbar or the wood found inside the home." The jury saw photos of Champ that the officers took, and the photos show what the jury could have believed was blood and injuries on the dog.

Based on the evidence and testimony at trial, a jury could rationally infer that Scyrus struck Champ with one or more objects, causing the dog unjustifiable pain and suffering. *See* Tex. Penal Code Ann. § 42.092(a)(8); *see generally, e.g.*, *Salinas v. State*, No. 06-18-00183-CR, 2019 Tex. App. LEXIS 6606 (Tex. App.—Texarkana Aug. 1, 2019, no pet.) (mem. op., not designated for publication) (concluding that

11

the evidence was sufficient to support a conviction for animal cruelty where the evidence reflected that the dog sustained multiple injuries and the defendant had access to the dog at the time of injury).

We reject Appellant's argument that the evidence is insufficient because it is circumstantial and not direct evidence. Circumstantial evidence is just as probative as direct evidence. *See Hooper*, 214 S.W.3d at 13. To the extent Appellant argues that Paige gave conflicting statements to law enforcement, we assume the jury resolved any such conflicts in favor of the verdict. *See Brooks*, 323 S.W.3d at 899 n.13 (citing *Jackson*, 443 U.S. at 326). As to Appellant's argument that the State failed to offer fingerprint or blood evidence, the absence of that type of evidence does not render other evidence insufficient. *See Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("The absence of DNA or fingerprint evidence at trial does not render the other evidence insufficient to support the conviction.") (citing *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Sims v. State*, 84 S.W.3d 768, 774 (Tex. App.—Dallas 2002, pet. ref'd)). After reviewing all the evidence in the light most favorable to the trial court's judgment, we find that a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 912. Therefore, we conclude that sufficient evidence supports his conviction.

That said, we note that the section of the judgment entitled "Offense for which Defendant Convicted[]" recites "CRUELTY NON-LIVESTK ANIM: KILL/POISON/SBI[.]" The indictment in this case alleges that Scyrus "knowingly or recklessly torture[d] an animal," which generally tracks the language of section 42.092 (b)(1) of the Texas Penal Code. *See* Tex. Penal Code Ann. § 42.092(b)(1). Subsection (b)(2) of section 42.092 pertains to cruelty to a non-livestock animal by killing, poisoning, or causing serious bodily injury to an animal, which was not alleged in the indictment in this case. *See id.* § 42.092(b)(2). This Court has the authority to reform the trial court's judgment to correct clerical errors. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). We therefore reform the judgment to delete the following: ":KILL/POISON/SBI[.]"

We overrule Appellant's issue, and we affirm the trial court's judgment of conviction as reformed.

AFFIRMED AS REFORMED.

LEANNE JOHNSON
Justice

Submitted on August 21, 2025
Opinion Delivered August 27, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

13